# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 115

### OCTOBER TERM, A.D. 2019

**November 14, 2019**

|  |  |
|---|---|
| PAUL A. WOODIE and KIMBERLY A. WOODIE a/k/a KYMBERLY A. WOODIE a/k/a KYM WOODIE, husband and wife,<br><br>Appellants<br>(Defendants),<br><br>v.<br><br>JANET WHITESELL,<br><br>Appellee<br>(Plaintiff). | S-19-0047 |
| PAUL A. WOODIE and KIMBERLY A. WOODIE a/k/a KYMBERLY A. WOODIE a/k/a KYM WOODIE, husband and wife,<br><br>Appellants<br>(Defendants),<br><br>v.<br><br>JANET WHITESELL,<br><br>Appellee<br>(Plaintiff). | S-19-0077 |

*Appeal from the District Court of Teton County*
The Honorable Timothy C. Day, Judge

*Representing Appellants:*
William R. Fix and Jessica Simons of Fix Law Office, Jackson, Wyoming; Larissa A. McCalla, Wyarno, Wyoming.  Argument by Ms. McCalla.

*Representing Appellee:*
John R. Goodell of Racine Olson, PLLP, Boise, Idaho.

***Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.***

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Janet Whitesell sued Paul and Kimberly Woodie (Woodies) in the district court in Teton County, Wyoming, seeking to collect on a promissory note (Note).  The Woodies executed the Note in Idaho and delivered it to Ms. Whitesell in payment for real estate located in Idaho.  The Note was originally secured by a deed of trust in the property.  At the time of the transaction, neither party had any connection with Wyoming.  The Woodies filed several motions to dismiss the Wyoming lawsuit, asserting the Wyoming district court lacked subject matter jurisdiction and the lawsuit was barred by the statute of limitations. The district court denied the Woodies' motions to dismiss and granted summary judgment in favor of Ms. Whitesell.  The Woodies challenge both rulings on appeal.  We affirm.

## FACTS

[¶2]    In May 2011, Ms. Whitesell sold her home in Idaho to the Woodies for $225,000. The Woodies paid $50,000 with money they borrowed from Snake River Funding (Snake River) and delivered a $175,000 promissory note to Ms. Whitesell for the balance.  The Note called for the Woodies to make 47 monthly installments beginning July 1, 2011, and to make a balloon payment on July 1, 2015.  In return, Ms. Whitesell delivered a warranty deed to the Woodies, which they recorded.  The Woodies gave Snake River a first deed of trust in the subject property as security for the debt associated with the $50,000 down payment and gave Ms. Whitesell a second deed of trust in the same property to secure the $175,000 Note.

[¶3]    The Woodies made five (5) monthly payments to Ms. Whitesell.  They stopped making payments on the Note in December 2011, asserting Ms. Whitesell failed to timely vacate the property.  In September 2012, Ms. Whitesell recorded a Notice of Default in the property records in Idaho.  The next month, Snake River, as senior lienholder, also recorded a Notice of Default and began foreclosure proceedings.  Snake River foreclosed on the property; neither Ms. Whitesell nor the Woodies redeemed the property.

[¶4]    In July 2017, Ms. Whitesell filed this lawsuit in Teton County, seeking judgment against both Mr. and Mrs. Woodie on the Note.  A Teton County deputy sheriff served Mr. Woodie with the complaint and a summons in Teton County, Wyoming.  Shortly thereafter, without filing any challenge to the Wyoming court's personal jurisdiction over either defendant, Wyoming counsel entered an appearance on behalf of both Mr. and Mrs. Woodie. The Woodies later filed several motions to dismiss arguing, among other things, Ms. Whitesell's complaint was barred by the applicable Idaho statute of limitations and the district court lacked subject matter jurisdiction over her complaint.  The district court denied the motions to dismiss.

1

[¶5]    Ms. Whitesell filed a motion for summary judgment with an affidavit stating the Woodies defaulted on the Note and establishing the balance due.  The district court found there were no genuine issues of material fact and granted summary judgment in her favor.

## ISSUES

[¶6]    The issues presented by the Woodies are:

1.  Did the district court have subject matter and personal jurisdiction?

2.  Did the district court correctly apply the correct Idaho statute of limitations?

3.  Did the district court fail to properly apply the Idaho Trust Deeds Act?

4.  Did the district court err in awarding interest, attorney's fees and costs to Ms. Whitesell?

## DISCUSSION

### 1.  Did the district court have subject matter and personal jurisdiction?

[¶7]    In their issue statement, the Woodies claim the district court lacked subject matter jurisdiction; however, a close reading of their argument shows they challenge personal jurisdiction as well.  Accordingly we will address both.

[¶8]    Jurisdictional issues "present questions of law that this Court reviews *de novo*." *DeLoge v. Homar*, 2013 WY 33, ¶ 10, 297 P.3d 117, 120 (Wyo. 2013) (citing *Hall v. Park County*, 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010)).  *See also, Operation Save America v. City of Jackson,* 2012 WY 51, ¶ 16, 275 P.3d 438, 447 (Wyo. 2012) (subject matter and personal jurisdiction are questions of law considered *de novo,* without regard to the district court's determination) (citing *Meyer v. Hatto,* 2008 WY 153, ¶ 14, 198 P.3d 552, 555 (Wyo. 2008), and *Northfork Citizens for Responsible Dev. v. Park Cty. Bd. of Cty. Comm'rs,* 2008 WY 88, ¶ 6, 189 P.3d 260, 262 (Wyo. 2008)).

### a.  Subject Matter Jurisdiction

[¶9]    "Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'"  *Lacey v. Lacey*, 925 P.2d 237, 238 (Wyo. 1996) (quoting *Fuller v. State*, 568 P.2d 900, 903 (Wyo. 1977)).  Wyoming courts derive their subject matter jurisdiction from the Wyoming Constitution and statutes enacted by the Wyoming legislature. *Best v. Best*, 2015 WY 133, ¶ 11, 357 P.3d 1149, 1152 (Wyo. 2015).  Our constitution recognizes broad jurisdiction in the district courts, stating they have "original jurisdiction of **all** causes both at law and in equity … in which jurisdiction

2

shall not have been by law vested exclusively in some other court[.]" Wyoming Constitution Art. 5, § 10 (emphasis added). The Wyoming legislature limited a district court's subject matter jurisdiction by vesting "exclusive original jurisdiction" in circuit courts for contract and other actions where the amount sought does not exceed fifty thousand dollars ($50,000.00). Wyo. Stat. Ann. § 5-9-128 (LexisNexis 2019). It has not, however, limited a district court's jurisdiction over contract claims for contracts made or performed outside Wyoming. The starting point in this analysis, then, is that district courts have extensive subject matter jurisdiction, enabling them to consider all common law causes (except as limited by the legislature). In this case, Ms. Whitesell sued to enforce a contract, in particular a promissory note. It goes without saying that district courts in Wyoming have subject matter jurisdiction to adjudicate promissory notes and other contract cases as long as the amount in controversy requirement is met. *See, e.g.*, *Thornock v. Pacificorp,* 2016 WY 93, 379 P.3d 175 (Wyo. 2016) (contract dispute adjudicated in district court); *Prudential Preferred Properties v. J & J Ventures, Inc.,* 859 P.2d 1267 (Wyo. 1993) (dispute over promissory note adjudicated in district court).

[¶10] The Woodies assert the Note in this case belongs to a separate class of contracts which a Wyoming court may not enforce, as the Note was made in Idaho and was secured by real estate in Idaho. The Woodies provide no authority for either of these novel positions. They make an unsupported assertion that Wyoming courts should not have subject matter jurisdiction over contracts made outside Wyoming because to do so would greatly burden the Wyoming courts and encourage forum shopping. Those assertions are suspect, have not been the law in Wyoming to this point, and the Woodies fail to support them. We decline to judicially create a new limitation on subject matter jurisdiction in the manner they propose. The fact that a promissory note was made in another state or was secured by collateral located in another state does not impact a Wyoming district court's subject matter jurisdiction to resolve a case based on the note.

[¶11] We previously recognized that Wyoming courts have subject matter jurisdiction to resolve disputes involving contracts made outside the state if either party to the contract is subject to personal jurisdiction in Wyoming. *Booth v. Magee Carpet Co.*, 548 P.2d 1252, 1256 (Wyo. 1976). "[T]he general rule is that when a suit is based upon a contract, as in this case, the action is transitory and may be determined by any court which can obtain jurisdiction on the person without regard to its place of execution or performance." *Id.*

[¶12] The Woodies claim our holding in *Booth* is limited to circumstances when performance of the contract somehow is connected to Wyoming. *Booth* states exactly the opposite. Our language in *Booth* is unambiguous, recognizing subject matter jurisdiction in such contract cases "*without regard to its place of execution or performance*." *Id.* at 1256 (emphasis added).

[¶13] The Woodies assert the district court had no subject matter jurisdiction because the Note was part of an Idaho real estate transaction. Wyoming courts do not have jurisdiction

3

to enforce contracts in a manner which affects title to real estate in another state. This limitation, however, does not turn on whether the contract was made outside Wyoming, but instead is a limitation on a Wyoming court's authority to affect title to real estate in another state. "We have stated that we think the issue settled, at least since *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909), that the court of one state has no power to directly affect title to land located wholly within the borders of another. Decrees and judgments purporting to this effect are void, and to the extent the decree before us purports to so do it must fail." *Meima v. Broemmel*, 2005 WY 87, ¶ 64, 117 P.3d 429, 450 (Wyo. 2005).

[¶14]  A Wyoming court's inability to affect title to real estate in another state is irrelevant to this case. The Note the Woodies gave Ms. Whitesell has no effect on title to real estate located in Idaho or anywhere else. Although the Note originally was secured by a second deed of trust in Idaho property, that deed of trust was extinguished by foreclosure and is not part of Ms. Whitesell's Wyoming case against the Woodies. Any judgment resulting from Ms. Whitesell's suit will have no effect on any title to real estate.

### b.  Personal Jurisdiction

[¶15]  Within their subject matter jurisdiction argument, the Woodies assert they had insufficient contacts with Wyoming to establish a Wyoming court's personal jurisdiction over them. They argue that because their activity in Wyoming (operating a towing business in Teton County) is unrelated to the Note, the Wyoming district court could not exercise personal jurisdiction over them in a suit based on the Note.

[¶16]  Wyoming courts, by statute, have personal jurisdiction over any person on any basis that does not violate the Wyoming or United States Constitution. Wyo. Stat. Ann. § 5-1-107(a) (LexisNexis 2019). "So long as the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the courts of this state have jurisdiction over a defendant." *Black Diamond Energy Partners 2001-A Ltd. v. S&T Bank*, 2012 WY 84, ¶ 19, 278 P.3d 738, 743 (Wyo. 2012); *Markby v. St. Anthony Hosp. Systems*, 647 P.2d 1068, 1074 (Wyo. 1982).

[¶17]  The United States Supreme Court has recognized personal jurisdiction based on one's presence in a state does not violate the United States Constitution.

> Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State. The view developed early that each State had the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly

4

serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit.

*Burnham v. Superior Court of California, Cty. of Marin*, 495 U.S. 604, 610-11, 110 S. Ct. 2105, 2110, 109 L. Ed. 2d 631 (1990).

[¶18]  Such personal jurisdiction results whenever someone is in the State without regard to the reason for his presence.  It makes no difference that the Woodies claim to only have been in Wyoming to run their business.

> Decisions in the courts of many States in the 19th and early 20th centuries held that personal service upon a physically present defendant sufficed to confer jurisdiction, without regard to whether the defendant was only briefly in the State or whether the cause of action was related to his activities there. *See, e.g., Vinal v. Core,* 18 W.Va. 1, 20 (1881); *Roberts v. Dunsmuir,* 75 Cal. 203, 204, 16 P. 782 (1888); *De Poret v. Gusman,* 30 La.Ann., pt. 2, pp. 930, 932 (1878); *Smith v. Gibson,* 83 Ala. 284, 285, 3 So. 321 (1887); *Savin v. Bond,* 57 Md. 228, 233 (1881); *Hart v. Granger,* 1 Conn. 154, 165 (1814); *Mussina v. Belden,* 6 Abb.Pr. 165, 176 (N.Y.Sup.Ct.1858); *Darrah v. Watson,* 36 Iowa 116, 120-121 (1872); *Baisley v. Baisley,* 113 Mo. 544, 549-550, 21 S.W. 29, 30 (1893); *Bowman v. Flint,* 37 Tex.Civ.App. 28, 29, 82 S.W. 1049, 1050 (1904). See also *Reed v. Hollister,* 106 Ore. 407, 412–414, 212 P. 367, 369-370 (1923); *Hagen v. Viney,* 124 Fla. 747, 751, 169 So. 391, 392-393 (1936); *Vaughn v. Love,* 324 Pa. 276, 280, 188 A. 299, 302 (1936).

*Id.,* 495 U.S. at 612-13, 110 S.Ct. at 2111.  The Supreme Court concluded its opinion in *Burnham* by stating, "The Due Process Clause does not prohibit [state] courts from exercising jurisdiction … based on the fact of in-state service of process." *Id*., 495 U.S. at 628, 110 S.Ct. at 2119.  This principle applies to the Woodies.

[¶19]  The Wyoming district court had personal jurisdiction over Mr. Woodie because he was served within the state and, as a result, there is no question the court had personal jurisdiction regarding him.

[¶20]  The parties do not address Mrs. Woodie separately and the record does not indicate she was personally served.  However, the first document the Woodies' attorneys filed in the case was a voluntary appearance on behalf of both Mr. and Mrs. Woodie.  This appearance did not contest the trial court's personal jurisdiction over either Mr. or Mrs. Woodie.  We have explained:

In order for a court to acquire jurisdiction over a defendant, that defendant must be properly served or must "voluntarily" appear. A judgment entered without the court having jurisdiction is null and void. A defendant may waive his right to challenge a court's jurisdiction. Such a challenge should be made at the defendant's soonest opportunity. Failure to timely broach the issue with the court may result in waiver of that defense. Most importantly for this case, where a defendant appears voluntarily, without questioning the court's personal jurisdiction, that appearance is the equivalent of proper service of process. *Matter of Adoption of MSVW,* 965 P.2d 1158, 1162 (Wyo.1998); and *see Ostermiller v. Spurr,* 968 P.2d 940, 943 (Wyo.1998) (consent to court's jurisdiction for one purpose may result in court's jurisdiction for any related purpose).

*Knight ex rel. Knight v. Estate of McCoy*, 2015 WY 9, ¶ 27, 341 P.3d 412, 419 (Wyo. 2015) (quoting *Operation Save Am.,* ¶ 54, 275 P.3d at 455-56 (quoting *JAG v. State Dep't of Family Servs.,* 2002 WY 158, ¶ 13, 56 P.3d 1016, 1019 (Wyo. 2002))); *see also, Walton v. State ex rel. Wood,* 2002 WY 108, ¶ 10, 50 P.3d 693, 697 (Wyo. 2002) (failure to question personal jurisdiction at earliest opportunity deemed a waiver). Ms. Woodie appeared voluntarily, without questioning the district court's personal jurisdiction over her. That appearance was the equivalent of service of process and precludes her challenge to personal jurisdiction. In sum the district court had subject matter jurisdiction and personal jurisdiction over both Mr. and Mrs. Woodie.

## 2. Did the district court correctly apply the correct Idaho statute of limitations?

[¶21] The Woodies moved to dismiss Ms. Whitesell's Wyoming lawsuit on the Note, claiming it was barred by Idaho's statute of limitations for contract claims. The district court denied that motion, finding her suit was timely under Idaho's statute of limitations for claims based on promissory notes/negotiable instruments.

[¶22] The Woodies' motion to dismiss based on the statute of limitations was, in effect, a motion for failure to state a claim upon which relief could be granted under W.R.C.P. 12(b)(6) because it relied on the allegations in the complaint. *Inman v. Boykin,* 2014 WY 94, ¶¶ 11-21, 330 P.2d 275, 279-81 (Wyo. 2014); *Vance v. Wyomed Lab, Inc.,* 2016 WY 61, 375 P.3d 746 (Wyo. 2016); *Irene v. Seneca Ins. Co., Inc.,* 2014 WY 145, 337 P.3d 483 (Wyo. 2014). "When reviewing W.R.C.P. 12(b)(6) motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff." *DeLoge, supra,* at 120. "Whether an action is barred by the statute of limitations is a

6

question of law that this Court reviews de novo." *Inman*, ¶ 21, 330 P.3d at 281 (citing *Hoke v. Motel 6 Jackson*, 2006 WY 38, ¶ 6, 131 P.3d 369, 373 (Wyo.2006)). *See also, Boutelle v. Boutelle*, 2014 WY 147, ¶ 7, 337 P.3d 1148, 1151 (Wyo. 2014).

[¶23]   The parties agree Idaho's statutes of limitation apply because Ms. Whitesell's cause of action on the Note arose in Idaho.   Application of Idaho's statutes of limitation is required by Wyoming's "borrowing statute," Wyo. Stat. Ann. § 1-3-117 (LexisNexis 2019), which states:  "If by the laws of the state or country where the cause of action arose the action is barred, it is also barred in this state."   When a Wyoming court considers another state's statute of limitation under our borrowing statute, it must consider "any applicable tolling or other statutes as well as pertinent court cases.  In effect, plaintiff's cause must be viewed as if filed in the state where under the laws of that state a cause of action accrued." *Boutelle,* ¶ 15, 337 P.3d at 1153.

[¶24]   The relevant dates were stated in Ms. Whitesell's complaint and are not in dispute. The promissory note required monthly installments beginning on July 1, 2011, and continuing on the same day of each consecutive month until June 1, 2015, when the entire balance was due.  The Woodies made the monthly payments from July 1, 2011, through November 1, 2011, but made no payments thereafter.  The Woodies defaulted and the cause of action accrued on December 1, 2011.  Ms. Whitesell filed suit in Wyoming on July 21, 2017, five years and seven months after the cause accrued.

[¶25]   The Woodies argue Idaho's basic statutes of limitation applicable to contracts control.  Those statutes state:  (1) "Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute," Idaho Code Ann. § 5-201 (LexisNexis 2019); and (2) "Within five (5) years:  An action upon any contract, obligation or liability founded upon an instrument in writing."  Idaho Code Ann. § 5-216 (LexisNexis 2019).

[¶26]   The district court, however, found this case was one of those "special cases" when a "different limitation is prescribed by statute."   The different limitation is found in the Negotiable Instruments section of Idaho's Uniform Commercial Code, which states "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date."  Idaho Code Ann. § 28-3-118 (LexisNexis 2019).

[¶27]   Idaho Code Ann. § 28-3-102 (LexisNexis 2019) states section 3 of Idaho's Uniform Commercial Code, including § 28-3-118, applies to negotiable instruments.  The Woodies argue the Note is not a "negotiable instrument," thus the six (6) year limitations period does not apply.  The district court disagreed, and so do we.

7

[¶28] Idaho's Uniform Commercial Code provides a specific definition for a negotiable instrument. It states:

> "[N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (b) Is payable on demand or at a definite time; and
>
> (c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Idaho Code Ann. § 28-3-104 (1) (LexisNexis 2019).

[¶29] The Woodies argue the Note is not a "negotiable instrument" under the statute because it is not "an unconditional promise" to pay. Idaho law defines an unconditional promise as:

> Except as provided in this section, for the purposes of section 28-3-104(1), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another writing, or (iii) that rights or obligations with respect to the promise or order are stated in another writing. A reference to another writing does not of itself make the promise or order conditional.

Idaho Code Ann. § 28-3-106(1) (LexisNexis 2019). The Note explicitly states that the Woodies "promise to pay to the order of Janet Whitesell." The Note does not fall into the exceptions stated in § 28-3-106(1)(i) or (ii). The Note does not state any condition for payment. It contains no statement nor implication that the promise to pay is governed by any other instrument. The Woodies claim the Note is conditioned upon terms in the parties' real estate contract and submit Ms. Whitesell did not properly vacate the property as anticipated by that contract. However, the Note never mentions the real estate contract and does not make payment conditional on when or whether Ms. Whitesell moved out.

[¶30] With respect to § 28-3-106(1)(iii), the Note does not state rights or obligations with respect to the Woodies' promise to pay are found in another document. The Note references the Deed of Trust which sets out "rights as to acceleration," but § 28-3-106(2) specifically provides that reference to another document for acceleration rights does not make a note conditional. On its face, then, the Note meets Idaho's statutory definition of a negotiable instrument and does not fall into any of the listed exceptions.

[¶31] In a curious assertion, the Woodies claim the reference to the Deed of Trust in the Note made the obligation to pay conditional because Ms. Whitesell had the option to foreclose on the property. They provide no logical argument or authority for this position. We see nothing about the existence of real estate collateral which would make Ms. Whitesell's obligation to pay the Note conditional. Furthermore, the Woodies ignore the fact that a prior lienholder had foreclosed, effectively extinguishing the Deed of Trust.

[¶32] Finally, the Woodies argue the Warranty Deed, which they received in return for the Note, "disqualifies the promissory note from consideration as a negotiable instrument under Idaho Code sections 28-3-104(1) and 28-[3]-106(1)." This argument, consisting of a mere six sentences in their opening brief, is entirely devoid of logic or authority. The Woodies present no possible explanation for how the Warranty Deed could make the Note anything other than an unconditional promise to pay. Neither document referenced the other, nor did either express any conditions upon the Woodies' obligation to pay.

[¶33] The essence of the Woodies' arguments is that their obligation to pay on the Note was conditioned upon Ms. Whitesell moving out of the property. The Note contains no such condition. The Woodies invite us to find such a condition in the real estate contract and apply that condition to the Note. Ms. Whitesell responds the contract does not make the Woodies' obligation to pay conditional upon Ms. Whitesell vacating by a certain date. Whether the contract included such a requirement, however, is unrelated to the issue of whether the Note is conditional. It simply is not.

### 3. Did the district court fail to properly apply the Idaho Trust Deeds Act?

[¶34] The Woodies assert the district court erred in ignoring required procedures under the Idaho Trust Deeds Act. Essentially, the Woodies claim the Act required Ms. Whitesell to foreclose on her second deed of trust before she could sue them on the Note. We decline to address this argument as the Woodies failed to raise this claim before the district court.

[¶35] The Woodies did not cite the Idaho Trust Deeds Act in any of their pleadings or motions. We find no indication the Woodies ever claimed the Idaho Trust Deeds Act required Ms. Whitesell to take any particular action or that they ever claimed the Act precluded her from suing on the Note.

9

[¶36] Although the record reveals some terminology used in the Idaho Trust Deeds Act, the Woodies never connected that language to any statutory requirements. Moreover, while the Woodies generally claimed Ms. Whitesell had a duty to mitigate her losses, they likewise failed to connect that general claim to any statute. Neither side cited the Idaho Trust Deeds Act to the district court, nor did they cite to any case requiring the Act's application to this case. Because the Woodies failed to claim lack of compliance with the Idaho's Trust Deeds Act, the district court did not address this issue in granting summary judgment. "This court has taken a dim view of a litigant trying a case on one theory and appealing it on another…. Parties are bound by the theories they advanced below." *Crofts v. State ex. rel. Dept. of Game and Fish*, 2016 WY 4, ¶ 19, 367 P.3d 619, 624 (Wyo. 2016) (quoting *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004)).

[¶37] Accordingly, we decline to address this issue for the first time on appeal.

### 4. Did the district court err in awarding interest, attorney's fees and costs to Ms. Whitesell?

[¶38] The Woodies assert the district court's Order on Attorney's Fees, Costs and Interest must be reversed. Their argument is simply an assertion that if we hold in their favor with respect to their jurisdiction and statute of limitations arguments , the district court's order on attorney's fees, costs and interest must be reversed. They make no claim the order was unauthorized or that the amount of fees, costs and interest was unreasonable. The Note clearly authorized an award of attorney's fees. Because we affirm the district court's conclusions regarding jurisdiction and the statute of limitations, we also affirm the district court's Order on Attorney's Fees, Costs and Interest.

[¶39] Affirmed.