# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 57

**APRIL TERM, A.D. 2020**

*May 5, 2020*

LIFE CARE CENTER OF CASPER,

Petitioner,

v.

LEAH BARRETT,

Respondent.

IN THE MATTER OF THE
WRONGFUL DEATH OF: Betty June
Cochran, deceased.

LIFE CARE CENTER OF CASPER,

Appellant
(Respondent),

v.

LEAH BARRETT, as Wrongful Death
Representative of Betty June Cochran,

Appellee
(Petitioner).

S-19-0211, S-19-0227

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Life Care Center of Casper:*

Lena K. Moeller and Amy M. Iberlin of Williams, Porter, Day, and Neville, P.C., Casper Wyoming

*Representing Leah Barrett:*

Frank R. Chapman, Michael J. Lansing, Patrick J. Lewallen of Chapman Valdez & Lansing, Casper Wyoming

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice**.

[¶1]    The district court held Life Care Center of Casper (Life Care) in contempt after it failed to comply with an order compelling it to respond to a pre-suit subpoena served on it in an action for appointment of a wrongful death representative.  Life Care filed a petition for review of the contempt order, and we granted the petition.  We conclude that the district court lacked jurisdiction to compel discovery in the appointment proceeding and vacate the contempt order.

## ISSUE

[¶2]    We granted Life Care's petition in order to review the district court's contempt order and to consider a single issue, which we restate as follows:

> Did the district court have jurisdiction under Wyo. Stat. Ann.
> § 1-38-103 to compel pre-suit discovery directed to a potential
> defendant or other person possessing information concerning
> the merits of a potential claim?

## FACTS

[¶3]    Betty June Cochran resided at Life Care, a nursing and long-term care facility in Casper, Wyoming.  Ms. Cochran died on May 6, 2018, allegedly after a fall at the facility.  On July 3, 2018, Leah Barrett, Ms. Cochran's granddaughter, filed a petition to be appointed Ms. Cochran's wrongful death representative, and on August 10, 2018, the district court granted the petition.

[¶4]    On August 29, 2018, Ms. Barrett, acting in the same proceeding, served Life Care with a subpoena, which demanded:

> 1)  all reports and documentation of any type including but not
> limited to accident reports concerning trips and falls in and
> around the court yard at Life Care Center of Casper and any
> reports of uneven surfaces in and around the court yard at Life
> Care Center of Casper from April 30, 2013 to April 30, 2018;
>
> 2) the complete personnel file of the Certified Nursing
> Assistant(s) or other aide(s) who were responsible for Betty
> June Cochran's care on April 30, 2018, at the time of Ms.
> Cochran's fall at Life Care Center of Casper;
>
> 3) a copy of each and every document, accident report,
> medical records of any type including but not limited to

1

physician records, nursing records, lab reports, radiology records, photographs, all materials and tangible evidence, interviews, notes, recordings of any kind, summaries, and communications in any form paper, electronic or otherwise provided by you, obtained by you, and ever in your possession, custody or control, which in any manner relates to Betty June Cochran's care and treatment from October 1, 2013 to May 1, 2018 . . . .

[¶5]     On September 17, 2018, counsel for Ms. Barrett provided a signed release for Ms. Cochran's medical records, and the next day counsel for Life Care responded:

> I am having my client comply with your request for the medical records of Ms. Cochran pursuant to the release and order sent below.  However, I do not believe you have subpoena power allowing you to conduct presuit discovery through the civil action initiated to appoint the wrongful death representative.  Therefore, we do not intend to respond to the subpoena you sent to LCC Casper.  I would be happy to consider any support you can provide me to the contrary.

[¶6]     Life Care thereafter provided Ms. Cochran's medical records but none of the other subpoenaed documents.  On September 26, 2018, Ms. Barrett filed a motion to compel, and Life Care objected on the ground that the district court lacked jurisdiction to compel discovery.  On November 8, 2018, the court issued an order granting the motion to compel in part.  It ordered Life Care:

> to produce all reports and documentation of any type including but not limited to accident reports concerning trips or falls of the Decedent Betty June Cochran in and around the court yard of Life Care Center of Casper (request number 1 of the subject Subpoena Duces Tecum), and copies of each and  every document, accident report, medical records of any type including but not limited to physician records, nursing records, lab reports, radiology records, photographs, all materials and tangible evidence, interviews, notes, recordings of any kind, summaries, and communications in any form paper, electronic or otherwise obtained and/or in the possession, custody or control of Life Care Center of Casper, which in any manner relate to Betty June Cochran's care and treatment from October 1, 2013 to May 1, 2018 (request number 3 of the subject Subpoena Duces Tecum); and that Life Care Center of Casper to make production of such documents to counsel for the

Wrongful Death Representative of Betty June Cochran within thirty (30) days from the date of hearing.

[¶7]    On December 6, 2018, Life Care filed a motion for reconsideration, or in the alternative, for an extension of time in which to comply with the order.  On December 12, the district court denied the motion for reconsideration but extended Life Care's deadline for complying to January 2, 2019.  On January 29, 2019, Ms. Barrett filed a motion for order to show cause why Life Care should not be held in contempt for failing to comply with the order compelling production.  On February 22, 2019, Life Care filed a renewed motion for reconsideration, and on March 12, 2019, it responded to Ms. Barrett's show cause motion and asked the court to stay proceedings on the motion until it ruled on the renewed motion for reconsideration.

[¶8]    On March 26, 2019, the district court denied Life Care's renewed motion for reconsideration, and on April 12, 2019, Life Care filed a notice of appeal from that order.  On June 25, 2019, this Court issued an order dismissing Life Care's appeal as untimely.  In a footnote, the order dismissing the appeal stated:

> Chief Justice Davis would have added language indicating that the means by which this appeal was dismissed should not be taken to imply that it was proper for Appellee to conduct discovery or for the district court to order it in this proceeding for appointment of a wrongful death representative. Wyo. Stat. Ann. § 1-38-103(b) provides that "[t]he appointment shall be made in a separate action brought solely for appointing the wrongful death representative." Discovery directed to a potential defendant or other person possessing information relating to the merits of a claim does not appear to relate to the appointment of a wrongful death representative.

[¶9]    On July 30, 2019, Life Care filed a W.R.C.P. 60(b)(6) motion requesting that the district court vacate its order compelling discovery.  In support of its motion, Life Care cited the footnote to our order dismissing its appeal.

[¶10]  The district court denied Life Care's Rule 60(b)(6) motion and held it in contempt for failing to comply with the order compelling production of documents.  With respect to the contempt order, the court found Life Care to be in civil contempt and ordered it to "pay the Wrongful Death Estate of Betty June Cochran in the form of sanctions $250.00 per day for each day after August 30, 2019 that it does not comply with this Court's order."

[¶11]  Life Care filed a notice of appeal from the order denying its Rule 60(b)(6) motion.  It also filed a separate petition for writ of review, which sought review of the order holding

3

it in contempt. On October 8, 2019, this Court granted Life Care's petition for writ of review, and we thereafter consolidated Life Care's appeal and petition for our review.[1]

## STANDARD OF REVIEW

[¶12] Life Care contends that the district court exceeded its jurisdiction when it enforced discovery in the proceeding to appoint a wrongful death representative. The existence or non-existence of a court's subject matter jurisdiction is a question of law that we review de novo. *Woodie v. Whitesell*, 2019 WY 115, ¶ 8, 451 P.3d 1152, 1155 (Wyo. 2019) (quoting *DeLoge v. Homar*, 2013 WY 33, ¶ 10, 297 P.3d 117, 120 (Wyo. 2013)). The question also requires that we interpret the statutes governing the appointment of a wrongful death representative, which is likewise a question of law that we review de novo. *Sullivan v. State*, 2019 WY 71, ¶ 7, 444 P.3d 1257, 1259 (Wyo. 2019) (citing *Parkhurst v. State*, 2019 WY 63, ¶ 9, 443 P.3d 834, 836 (Wyo. 2019)).

## DISCUSSION

### A. District Court's Jurisdiction to Enforce Discovery

[¶13] "Subject matter jurisdiction is 'the power to hear and determine the matter in controversy between the parties.'" *Linch v. Linch*, 2015 WY 141, ¶ 17, 361 P.3d 308, 313 (Wyo. 2015) (quoting *Brush v. Davis*, 2013 WY 161, ¶ 9, 315 P.3d 648, 651 (Wyo. 2013)). A district court's subject matter jurisdiction is invoked with the filing of a pleading "stating a case belonging to a general class over which the authority of the court extends." *Harmon v. Star Valley Med. Center*, 2014 WY 90, ¶ 46, 331 P.3d 1174, 1187 (Wyo. 2014) (quoting *Brown v. City of Casper*, 2011 WY 35, ¶ 44, 248 P.3d 1136, 1146 (Wyo. 2011)). We have explained:

> A court's subject matter jurisdiction lies dormant until it is called upon to exercise it by some sort of initiating procedural mechanism, such as a pleading, complaint, or information. At that point, the court "acquires jurisdiction" in the limited sense of procedurally having the authority to proceed and exercise its subject matter jurisdiction in a particular case.

*CSC Grp. Holdings, LLC v. Automation & Elecs., Inc.*, 2016 WY 26 ¶ 21, 368 P.3d 302, 307 (Wyo. 2016) (citing *State v. Kusel*, 29 Wyo. 287, 295-96, 213 P. 367, 368-69 (1923)).

---

[1] Ms. Barrett moved to dismiss Life Care's appeal from the denial of its Rule 60(b)(6) motion on grounds that the denial was not an appealable order. Our resolution of Life Care's petition for writ of review makes discussion of its appeal and the motion to dismiss unnecessary.

[¶14]  Wyo. Stat. Ann. § 1-38-101 creates a cause of action for wrongful death, which is to be brought by a decedent's wrongful death representative.  Wyo. Stat. Ann. § 1-38-102(a) (LexisNexis 2019).  The action for appointing the wrongful death representative is governed by Wyo. Stat. Ann. § 1-38-103, which provides in relevant part:

> (b) The district court may appoint the wrongful death representative at any time after the decedent's death. ***The appointment shall be made in a separate action brought solely for appointing the wrongful death representative***. . . .
>
> (c) The appointment of the wrongful death representative is a procedural device intended to provide a representative to investigate and bring an action under W.S. 1-38-101. Irregularities in the manner or method of appointment are not jurisdictional.

Wyo. Stat. Ann. § 1-38-103 (emphasis added).

[¶15]  We do not question that Ms. Barrett properly invoked the district court's jurisdiction under § 103(b) when she filed her petition for appointment as Ms. Cochran's wrongful death representative.  The question is whether the district court exceeded its jurisdiction when, after making the appointment, it heard discovery motions and compelled discovery. Ms. Barrett contends that the court acted within its jurisdiction because § 103 contemplates that a wrongful death representative will investigate any potential claim before filing an action, and that discovery under the Wyoming Rules of Civil Procedure is the expected and proper mechanism for conducting such an investigation. We disagree.

[¶16]  We interpret the statute governing the appointment of a personal representative in accordance with our rules of statutory interpretation.

> "When we interpret statutes, our goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'" *Fugle v. Sublette County School Dist. No. 9*, 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) (quoting *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009)). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)).

We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*PacifiCorp, Inc. v. Wyo. Dep't of Revenue*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908-09 (Wyo. 2017) (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).

*Sullivan*, ¶ 10, 444 P.3d at 1259-60 (quoting *Wyo. Jet Center, LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019)).

[¶17]   In support of her assertion that the district court acted within its jurisdiction, Ms. Barrett points to the first sentence of Wyo. Stat. Ann. § 1-38-103(c), which states that "[t]he appointment of the wrongful death representative is a procedural device intended to provide a representative to investigate and bring an action under W.S. 1-38-101."  She further points to Wyo. Stat. Ann. § 1-38-102(e), which provides that "[t]he court appointing the wrongful death representative may approve a settlement of a wrongful death action or a wrongful death claim and resolve disputes relating to the allocation of settlement proceeds."  Based on these two provisions, she argues that the district court's jurisdiction is invoked with the filing of a petition for appointment of a wrongful death representative and continues through the investigation and settlement of any such claim.  We reject this reading of the statute because it ignores the plain language of § 103(b) and distorts the clear intent of § 103(c).

[¶18]   Wyo. Stat. Ann. § 1-38-103(b) provides that the appointment of a wrongful death representative "shall be made in a ***separate action*** brought ***solely*** for appointing the wrongful death representative."  By its plain terms, the statute limits the proceeding to a single purpose: to make the requested appointment.  Moreover, it is to be a separate action, meaning separate from any wrongful death action brought pursuant to § 101, and separate from any action to approve a settlement brought pursuant to § 102(e).  After the appointment is made, the wrongful death representative certainly may investigate the claim

6

and bring a wrongful death action, but the plain language of § 103(b) makes it clear that those functions are not part of the appointment proceeding.

[¶19] Section 103(c) does not provide otherwise. It states, in its entirety, that "[t]he appointment of the wrongful death representative is a procedural device intended to provide a representative to investigate and bring an action under W.S. 1-38-101. Irregularities in the manner or method of appointment are not jurisdictional." Wyo. Stat. Ann. § 1-38-103(c). While § 103(c) refers to the representative's role, it is not a grant of authority to act within the appointment proceeding.[2] When read in its entirety, § 103(c)'s apparent objective is to prevent jurisdictional challenges to an eventual wrongful death action based on irregularities in the representative's appointment. To that end, it characterizes the appointment as procedural and specifies that such irregularities are not jurisdictional. Given that defects in subject matter jurisdiction are fatal and may be raised at any point in a proceeding, including well after a representative's appointment, it is understandable that the legislature would seek to minimize the effect of an irregularity in the appointment. *See Matter of Adoption of L-MHB*, 2018 WY 140, ¶ 9, 431 P.3d 560, 564 (Wyo. 2018) ("[W]e have long recognized that subject matter jurisdiction is an issue that can be raised at any time by any party or the Court. . . . A lack of subject matter jurisdiction constitutes a fundamental defect in a proceeding which cannot be cured by waiver or consent by the parties.") (citations omitted).

[¶20] We also disagree with Ms. Barrett's assertion that the terms "investigate" and "discovery" mean the same thing, and that her authority to investigate a wrongful death claim therefore necessarily entails discovery. "Discovery" is a term of art that refers to compulsory disclosure governed by a jurisdiction's rules of civil procedure. *See Black's Law Dictionary* 564 (10th ed. 2014). The term "investigate" is separately defined to mean "[t]o inquire into (a matter) systematically." *Black's Law Dictionary* 953 (10th ed. 2014). Investigations and discovery are plainly different things, and we will not expand the meaning of "investigate" beyond its plain meaning to include pre-suit discovery.

[¶21] We are not persuaded otherwise by the cases Ms. Barrett cites from other jurisdictions. Only one of the cases in fact discusses pre-suit discovery, and that is in reference to a state statute that specifically provides for pre-suit discovery. *See Garces v. Montano*, 947 So.2d 499, 501 (Fla. Dist. Ct. App. 2006) (referring to "statutorily mandated pre-suit discovery proceedings"); *see also* Fla. Stat. § 766.106 (2013) (held unconstitutional in part by *Weaver v. Myers*, 229 So.3d 1118 (Fla. 2017)) (establishing procedure for pre-suit investigation, notice, and discovery). As the Florida statute illustrates, had the Wyoming Legislature intended to provide a mechanism for pre-suit discovery, it could have done so in explicit terms. *See, e.g.*, Fla. Stat. § 766.106(6)(c)

---

[2] In fact, no such grant of authority would be required in § 103(c) because § 102(a) already authorizes the representative to bring a wrongful death action, and inherent in that is the authority to investigate the claim. *See* W.R.C.P. 11(b)(3) (requiring a party to make a reasonable inquiry to ensure that pleading has a factual and legal basis).

("Each request for and notice concerning informal presuit discovery pursuant to this section must be in writing, and a copy thereof must be sent to all parties.").

[¶22] Finally, we also reject Ms. Barrett's assertion that W.R.C.P. 45 independently authorized her subpoena and the district court's enforcement of it. First, "[t]he rules of civil procedure cannot extend or limit subject matter jurisdiction," so Rule 45 cannot serve as an independent source of authority for a court to enforce discovery. *CSC*, ¶ 20, 368 P.3d at 307 (citing *State ex rel. Frederick v. District Court*, 399 P.2d 583, 584-85 (Wyo. 1965)); W.R.C.P. 82 (rule does not extend or limit the jurisdiction of the district courts); *see also* 9A Wright & Miller, *Federal Practice and Procedure Civ.* § 2451 (3d ed. April 2020 update) (court issuing Rule 45 subpoena must have subject matter jurisdiction). Moreover, the majority rule recognizes that a Rule 45 subpoena is a form of discovery. *Circle Group, L.L.C. v. Southeastern Carpenters Regional Council*, 836 F.Supp.2d 1327, 1351-52 (N.D. Ga. 2011) (citing cases). As such, it is subject to Rule 26's limits on discovery, including its restriction on the timing of discovery, which requires the filing of a civil action and responsive pleading before commencing discovery. *Id.*; *see also* W.R.C.P. 26(d)(1); *State ex rel. Hopkinson v. Dist. Court, Teton County*, 696 P.2d 54, 72 (Wyo. 1985) (Rule 26 authorizes discovery only in "pending action").[3]

[¶23] Rule 45 thus does not come into play until an action is filed, which action, per W.R.C.P. 11, may not be filed without an adequate investigation. The statute allowing the appointment of a wrongful death representative requires only the intent to conduct such an investigation, and by allowing the representative to take the decedent's place, it provides the tools required for the investigation (for example, the ability to execute a medical release for the decedent's records). The legislature is presumed to know the law, including the restrictions on discovery and Rule 11's requirements, and the statute providing for the appointment of a representative fits neatly into this framework if it is interpreted to allow investigation of a claim as opposed to pre-suit discovery. *Sullivan*, ¶ 10, 444 P.3d at 1259-60 ("We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence.") (quoting *Wyo. Jet Center,* ¶ 12, 432 P.3d at 915) .

[¶24] Moreover, allowing discovery at the appointment stage of proceedings before suit presents practical difficulties. The scope of discovery, although liberal, is governed by the claims pled in a complaint. W.R.C.P. 26(b)(1) (unless otherwise limited, a party may obtain discovery regarding non-privileged matter that is relevant to any party's claim or defense); 8 Wright and Miller, *Federal Practice and Procedure Civ.* § 2007 (federal Rule

---

[3] W.R.C.P. 27, which Ms. Barrett also alludes to in her briefing, is the only rule that allows for any type of pre-suit discovery. It is strictly limited, however, to depositions to perpetuate testimony where required to prevent a failure or delay of justice. It does not authorize discovery to determine whether a factual basis exists to support a claim. 8A Wright & Miller, *Federal Practice and Procedure Civ.* § 2071 (3d ed. April 2020 update).

8

26 allows discovery of any matter related to a claim or defense of a party). Appellee has made no claim, and Life Care, which is apparently being considered as a defendant, has therefore had no opportunity to raise defenses.

[¶25] For example, a claim against a healthcare provider might include a direct negligence claim, an ostensible agency claim against a non-governmental health care provider, a negligent credentialing claim, or a claim that informed consent was not obtained. Each claim might allow a party making it to pursue different discovery. Without a complaint, there is no way to know what information, beyond the medical record (which can be obtained by a release), a party is entitled to discover. As one court observed:

> Presuit discovery is not intended for routine use; it creates practical and due process problems because discovery demands are made of individuals or entities before they are told what the issues are. *In re Jorden*, 249 S.W.3d 416, 423 (Tex. 2008) (orig. proceeding). Thus, "[c]ourts must strictly limit and carefully supervise presuit discovery[.]" [*In re*] *Wolfe*, 341 S.W.3d [932] at 933 [(Tex. 2011)].

*In re City of Tatum*, 567 S.W.3d 800, 804 (Tex. App. 2018).[4]

[¶26] To allow this use of discovery would truly be to permit the proverbial fishing expedition. Ms. Barrett has yet to commit to her theories of liability, and has been allowed to exercise coercive legal measures through a district court without so much as a Rule 11 assurance that she does so having made an investigation and having a good faith basis for any claim at all.

[¶27] Finally, we note that at the pre-suit stage, a living malpractice claimant could do no more than obtain the information available through a medical release, public sources of information, and whatever the care provider voluntarily provides. We can think of no reason that the legislature would provide an opportunity for pre-suit discovery in a wrongful death case but not in other negligence cases. It is more reasonable to interpret the statute as simply creating a mechanism by which the appointed representative could investigate a potential claim in the same manner as other claims—by executing medical releases, considering public sources, and obtaining expert review. Assuming that a good faith basis for a claim or claims could be developed, with the assistance of an expert witness

---

[4] Texas Rule of Civil Procedure 202.1 provides as follows:

> A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions either:
> (a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or
> (b) to investigate a potential claim or suit.

if necessary, the next steps would be to file a claim with the Medical Review Panel,[5] and then proceed to suit, at which point full discovery would be available. *See Lozano v. Circuit Court of Sixth Jud. Dist.*, 2020 WY 44, ¶ 27, 460 P.3d 721 (Wyo. 2020) ("Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'") (quoting *Sullivan*, ¶ 10, 444 P.3d at 1259-60).

[¶28]  We thus conclude that Ms. Barrett properly invoked the district court's jurisdiction to appoint her as Ms. Cochran's wrongful death representative, but that jurisdiction was limited to the appointment and matters related to the appointment.[6]  It therefore acted without jurisdiction when it compelled Life Care to comply with a discovery subpoena. The next question we must address is whether the court's contempt order may stand despite the court's lack of jurisdiction to compel discovery.

## B.    Contempt Order

[¶29]  "The power to punish for contempt is inherent in all courts of general jurisdiction in Wyoming." *Swain v. State*, 2009 WY 142, ¶ 13, 220 P.3d 504, 507 (Wyo. 2009) (citing *Skinner v. State*, 838 P.2d 715, 723 (Wyo. 1992)).  Generally, we will reverse a contempt order "only upon a finding of 'a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Lew v. Lew*, 2019 WY 99, ¶ 8, 449 P.3d 683, 686 (Wyo. 2019) (quoting *Greer v. Greer*, 2017 WY 35, ¶ 30, 391 P.3d 1127, 1135 (Wyo. 2017)).  We have also held, however, that if the order underlying a contempt order is found to be unlawful, that may in turn affect the validity of the contempt order. *Jensen v. Milatzo-Jensen*, 2013 WY 83, ¶ 7, 304 P.3d 969, 971 (Wyo. 2013) (citing *In Interest of C.N.*, 816 P.2d 1282, 1285 (Wyo. 1991)).

[¶30]  In *Jensen*, we reversed a contempt order issued for a party's failure to pay attorney fees after the underlying award of fees was reversed because the fees had not been shown to be reasonable. *Jensen*, ¶¶ 3, 8, 304 P.3d at 970, 972.  We explained:

> The law in Wyoming is well-settled that "Whether the adjudication of contempt 'survives the avoidance of [the] underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls.'" *See, e.g., In Interest of C.N.*, 816 P.2d 1282, 1285 (Wyo. 1991) (quoting *Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 499 (10th Cir. 1980)). As explained in *In Interest of C.N.*,

---

[5] If this turns out to be a medical malpractice claim when a complaint is filed.  Wyo. Stat. Ann. § 9-2-1513 et seq. (LexisNexis 2019).

[6] Wyo. Stat. Ann. §§ 1-38-102(e), 1-38-104(c), and 1-38-105 describe some of the continued relationship between the court and the wrongful death representative.  No statute expands the limit of § 1-38-103(b).

> The purpose of a civil contempt is to compel a party to comply with a **lawful** order. *Horn v. District Court, Ninth Judicial District*, 647 P.2d 1368 (Wyo. 1982). The purpose of a criminal contempt is to punish. *Id.*; *Tracy, Green & Company v. Warner*, 704 P.2d 1306 (Wyo. 1985).

*Id.*, 816 P.2d at 1285 (emphasis in original). In *Ager*, the Tenth Circuit elaborated more fully on the difference between civil and criminal contempt:

> The primary purpose of a criminal contempt is to punish defiance of a court's judicial authority. Accordingly, the normal beneficiaries of such an order are the courts and the public interest. *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822 (5th Cir. 1976). On the other hand, civil contempt is characterized by the court's desire "to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience." *Id.* at p. 827. The remedial aspects outweigh the punitive considerations. Thus, the primary beneficiaries of such an order are the individual litigants. The judicial system benefits to a lesser extent. *United States v. Wendy*, 575 F.2d 1025 (2d Cir. 1978).

> 622 F.2d at 499-500.

*Jensen*, ¶ 7, 304 P.3d at 971.

[¶31]   The Tenth Circuit explained its reasoning further in *Ager* when it explained why the same rule applied regardless of whether the civil contempt order was coercive or compensatory.

> (T)he reasoning implicit in United Mine Workers requires that coercive contempt be treated in the same fashion as compensatory contempt. In coercive contempt, as with remedial contempt, the reversal of the underlying injunction indicates that the complainant never had a valid right which was enforceable against the defendant. Just as a person is not entitled to reap a monetary benefit in such circumstances, so, too, should he be unable to insist upon the exaction of coercive

sanctions to finalize a process initiated by himself for his own benefit.

*Ager*, 622 F.2d at 500 (quoting *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336, 1347 (3d Cir. 1976)).

[¶32] As our discussion in *Jensen* illustrates, the question of whether a contempt order survives the reversal of the underlying order generally depends on whether the contempt order is civil or criminal. We have also held, however, that a criminal contempt order will not stand where the underlying order was entered without jurisdiction. *Matter of Contempt Order Against Anderson*, 765 P.2d 933, 937 (Wyo. 1988).

[¶33] In *Anderson*, the district court entered an order compelling witnesses to appear for depositions in response to an agency's notices of depositions. *Anderson*, 765 P.2d at 935. When the witnesses did not appear, the court held the respondent's attorney in indirect criminal contempt for failing to produce the witnesses for the depositions. *Id.* Our Court observed:

> The assistance of the court may be sought to enforce discovery in an administrative proceeding but only "[i]n case of contumacy or refusal to obey a subpoena issued by the agency in a contested case * * *." Section 16-3-107(c), W.S.1977. There is no question that this matter arises from a contested case. It is clear that the depositions were not sought by the issuance of any subpoena but only by "Notice of Deposition." The statute authorizes the pursuit of discovery, but only by subpoena, and the authority granted is limited by the statute. . . . The provision for judicial enforcement of a subpoena justifies the enforcement of a subpoena only, and nothing else, including a notice of deposition, may be the subject of an enforcement proceeding in the district court. *U.S. v. Stanack Sales Company*, 387 F.2d 849 (3rd Cir. 1968). *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

*Anderson*, 765 P.2d at 936 (some citations omitted).

[¶34] Having found that the district court lacked statutory authority to enforce the administrative agency's notices of deposition, the Court concluded:

> It follows that the district court in this matter had no subject matter jurisdiction with respect to the enforcement proceedings. Any order entered regarding those proceedings, including the contempt order addressed to Robert O. Anderson,

12

> cannot stand. It is an order issued without requisite jurisdiction and necessarily null, void, and of no effect.

*Anderson*, 765 P.2d at 937.

[¶35]  The district court characterized its order as a civil contempt order, but whether it was civil or criminal, our precedent dictates that it cannot stand.  Because the district court's § 103 jurisdiction did not extend to discovery enforcement, its order compelling discovery is null and void, and the contempt order must therefore be vacated.

## **CONCLUSION**

[¶36]  The sole purpose of a proceeding under Wyo. Stat. Ann. § 1-38-103(b) is the appointment of a wrongful death representative.  Once the appointment is final, the district court has no active case remaining before it under that section, and no jurisdiction to compel discovery.  The court's order compelling discovery was therefore a nullity, and its order holding Life Care in contempt is hereby vacated.

13