**Clarence ECHOLS, Appellant (Plaintiff),**

v.

**Dr. R.D. KEELER, Appellee (Defendant).**

No. 86–242.

Supreme Court of Wyoming.

April 17, 1987.

Alfred G. Kaufman, Jr., Lusk, signed the brief of appellant and presented oral argument.

David A. Scott of Murane & Bostwick, Casper, signed the brief of appellee and presented oral argument.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

This is a medical malpractice case. The issue on appeal is whether the district court erred in dismissing appellant's complaint for the reason that the claim stated therein was barred by the statute of limitations.

We affirm.

FACTS

On August 27, 1981, appellant injured his back at work. On September 11, 1981, he sought treatment from appellee, Dr. Keeler, a chiropractor. Dr. Keeler took X rays of the cervical and lumbar areas of appellant's back and performed "adjustments" intended to relieve appellant's pain. Appellant returned for treatment several times after the initial visit and further "adjustments" were administered by Dr. Keeler. On September 28, 1981, during appellant's seventh visit, Dr. Keeler observed that appellant was experiencing pain in the thoracic area of his back which "appeared to be progressing." Dr. Keeler took X rays of the thoracic area which revealed a "compression fracture of the T12 vertebrae" and "deterioration of T7–T8 disc space." On October 6, 1981, Dr. Keeler referred appellant to an orthopedic surgeon, Dr. Landon, for further evaluation. After October 6, 1981, appellant had no further contact with Dr. Keeler.

On October 22, 1981, appellant was hospitalized for neurogenic bladder, which is defined as "defective functioning of bladder due to impaired innervation." Stedman's Medical Dictionary (5th Ed.1982). He was referred to Dr. Cole who examined appellant and referred him to Dr. Gordy, a neurosurgeon, who immediately performed surgery upon appellant's back. Tissue samples obtained during the surgery re-

vealed a bacterial infection in appellant's spine. After the surgery, appellant was treated by Dr. Landon and two other specialists, Dr. Bailey and Dr. Lyford, for the damage caused by the infection, which included impairment of the functioning of appellant's legs and bladder.

On May 8, 1985, approximately three and one-half years after he had last been seen by Dr. Keeler, appellant filed a malpractice action against Dr. Keeler alleging negligence in the diagnosis and treatment of his back injury. At the time the action was filed, appellant was still being treated by Drs. Cole, Lyford, Bailey and Landon. On August 12, 1986, the district court dismissed appellant's complaint, finding that it was barred by the statute of limitations.

## CONTINUOUS TREATMENT RULE

Appellant contends that he is receiving a continuous course of treatment from Drs. Keeler, Landon, Cole, Lyford, and Bailey for the same injury which is the subject of this action and that, therefore, the two-year statute of limitations had not run at the time of filing his complaint. Section 1–3–107, W.S.1977, prescribes the limitation period for bringing a medical malpractice action. In pertinent part the statute provides:

"(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

"(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

"(A) Not reasonably discoverable within a two (2) year period; or

"(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence."

Appellant argues that his negligence claim against Dr. Keeler is not barred by the statute of limitations. We disagree.

In *Metzger v. Kalke,* Wyo., 709 P.2d 414, 417 (1985), we adopted the "continuous treatment" rule which provides that

"the act, error or omission which starts the running of the statute of limitations against medical malpractice actions is the termination of the course of treatment for the same or related illnesses or injuries."

"Termination" of treatment has reference to the practitioner against whom claim is made. We identified the following rationale underlying the continuous treatment rule:

" '[I]n the treatment of a patient the diagnosis might change from time to time, and it is commonly accepted in the medical profession that the diagnosis, in the first instance, is not binding on the physician. He should have the right, during the course of treatment, to change the diagnosis. * * *

" ' * * * The diagnosis referred to was a continuing biweekly one, and each time an incorrect diagnosis was made and an incorrect treatment applied, plaintiff's injuries were extended. It was not the error in the diagnosis originally made by defendant but its adherence thereto and course of treatment that brought about the injuries.' " *Metzger v. Kalke,* supra, at 417 (quoting *Williams v. Elias,* 140 Neb. 656, 1 N.W.2d 121 (1941)).

These policy considerations are also discussed in 1 D. Louisell and H. Williams, Medical Malpractice, ¶ 13.08 (1986):

"The so-called 'continuous treatment' rule has been defended on the grounds of fairness as well as on the basis of logic. Certainly it would not be equitable to bar a plaintiff who, for example, has been subjected to a series of radiation treatments in which the radiologist negligently and repeatedly administered an overdosage, simply because the plaintiff is unable to identify the one treatment that produced his injury. Indeed, in such a situation no single treatment did cause the harm; rather it was the result of several treatments, a cumulative effect. From the point of view of the physician, it would seem reasonable that if he has

made a mistake, a misdiagnosis, for example, he is entitled to the opportunity to correct the error before harm ensues. And, as one court has put it, 'It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician.'" (Footnote omitted.)

The policies behind the continuous treatment rule would not be served by applying it in the manner suggested by appellant in this case. Plaintiff here is not prejudiced by an inability to identify the treatment which might have caused his harm, nor is there anything in the record to suggest that Dr. Keeler had any desire to retain appellant as a patient and correct any error he might have made.

For purposes of appellant's malpractice action against Dr. Keeler, the only relevant course of treatment began on September 11, 1981, when appellant first visited Dr. Keeler and ended, at the latest, on October 6, 1981, when appellant last saw Dr. Keeler. After referral, Dr. Keeler did not continue as appellant's doctor nor was he associated with or engaged in assisting the doctors thereafter treating appellant. Thus the statute began to run, at the very latest, on October 6, 1981, and the time within which this action could be brought expired two years later, on October 6, 1983. Appellant did not file his complaint until May 8, 1985. The district court did not err in determining that the complaint was untimely filed. Appellant understandably did not claim that the statutory period was extended under the "discovery" provisions of the statute of limitations. See § 1-3-107(a)(i), W.S.1977. Accordingly we do not address that potential claim.

Affirmed.