# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 140

### OCTOBER TERM, A.D. 2020

*November 6, 2020*

MERRY CANDELARIA,

**Appellant**
**(Plaintiff),**

**v.**

S-20-0066

MAHESH KARANDIKAR, M.D.,

**Appellee**
**(Defendant).**

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
Bernard Q. Phelan, Attorney at Law, Cheyenne, Wyoming

*Representing Appellee:*
Scott P. Klosterman of Williams, Porter, Day & Neville, P.C., Casper, Wyoming

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Chief Justice.

[¶1]    Merry Candelaria filed a complaint against Mahesh Karandikar, M.D., which alleged that he negligently treated her spinal condition. The district court found that her complaint was barred by the statute of limitations and granted Dr. Karandikar's motion for summary judgment. We affirm.

## ISSUE

[¶2]    Ms. Candelaria presents a single issue on appeal, which we restate as:

> Did the district court correctly rule on summary judgment that Ms. Candelaria's complaint against Dr. Karandikar was barred by the statute of limitations under Wyo. Stat. Ann. § 1-3-107?

## FACTS

[¶3]    Merry Candelaria began seeing Dr. Karandikar at Mountain View Regional Hospital in Casper in October 2013, and her treatment with him continued until March 16, 2016. During that time, he performed seven surgeries on her spine, several of which were done to repair or replace failing hardware. In the midst of these multiple surgeries, on April 28, 2015, Ms. Candelaria sought a second opinion from Dr. Timothy Wirt in Colorado. Concerning that consultation, she testified:

> A.    His first statement to me was, "I reviewed this." He said, "Your back is an absolute mess."
>
> Q.    Okay.
>
> A.    And I said, "Well, I understand that. That's why I came for a consult."
>
> And he said to me that he would not – he said, "There's nothing I can do for you." He said, "Your back is just an absolute mess." He said, "I won't touch it."
>
> Q.    Okay.
>
> A.    He said, "It's too much to try to fix."
>
> Q.    Okay. And so did he make any other comments?

1

A. Yes. He stated to me that when I returned to Casper – he said, "You need to run as far as you can from him," he said, "because he's going to kill you before it's over."

Q. Okay.

A. He said, "He is doing this. You are just money to him."

[¶4] On her return, Ms. Candelaria contacted other surgeons in Casper, but none would see her, so she continued her care with Dr. Karandikar. Her final two surgeries with him were in January and February 2016. The January surgery was done to repair a dislodged rod and to re-fuse part of her spine. The February surgery was done to clean out an infection that developed in that same surgical wound.

[¶5] On March 15, 2016, Plaintiff saw Dr. Mark Dowell, an infectious disease specialist in Casper. Concerning that visit, she testified:

Q. Okay. And you saw him on March 15th, 2016. So that's the day before your last appointment with Dr. Karandikar?

A. Correct.

Q. All right. And when you met with him, I think you told me some things that he said. And I'd like to go back over that –

＊ ＊ ＊ ＊

Q. . . . You mentioned to me that upon examination, he asked you, "Who did this to your back?"

A. Correct.

Q. And you said Dr. Karandikar, and he was swearing.

A. Yes.

Q. Okay. Did he say to you that Dr. Karandikar had done something wrong?

A. He had stated to me that the washout was not done correctly because "If it would have been," he said, "you would not be here right now."

2

Q. Okay.

A. He said, "I would not have drained a liter and a half of infection out of your back."

Q. Did you conclude at that point that Dr. Karandikar had treated you inappropriately and committed malpractice?

A. Yeah. I had – yes. And I had thought that before I seen Dr. Dowell.

[¶6] On March 16, 2016, Ms. Candelaria saw Dr. Karandikar for the final time and terminated their doctor/patient relationship. On March 29, 2016, on referral from Dr. Dowell, she saw Dr. Clayton Turner, a surgeon with Advantage Orthopedics & Neurosurgery in Casper.

Q. Did Dr. Turner tell you that Dr. Karandikar had done something wrong?

A. He did not state a doctor's name. He just stated that the – he said, "I've never seen such a mess. What was he trying to do?"

And I said, "I can't answer that because I don't know."

He just used the term "he." He didn't state a name.

Q. Okay. So did you take that to mean Dr. Karandikar—

A. Yes.

\* \* \* \*

Q. So at this point, you felt, based upon what Dr. Wirt, Dr. Dowell, and Dr. Turner had said to you, that Dr. Karandikar had erred in his care –

A. Yes.

Q. – of you?

A. Mm-hmm.

3

[¶7]   On March 12, 2018, Ms. Candelaria filed a claim against Dr. Karandikar with the Wyoming Medical Review Panel, and on May 22, 2018, the Panel dismissed her claim due to Dr. Karandikar's waiver of review.  On June 29, 2018, she filed a complaint against Dr. Karandikar and Mountain View Regional Hospital, alleging that Dr. Karandikar did not meet the applicable standard of care in his performance of the surgeries on her and in her after care.[1]

[¶8]   Dr. Karandikar moved for summary judgment on the ground that the complaint was barred by the statute of limitations, Wyo. Stat. Ann. § 1-3-107.[2]  The district court granted Dr. Karandikar's motion.  It reasoned that Ms. Candelaria knew or had reason to know of her claim against Dr. Karandikar "when she visited Dr. Wirt in 2015, attempted to obtain second opinions from Casper Orthopedics and Wyoming Medical Center and visited Dr. Dowell regarding the infection in her back."  The court then applied the continuous treatment rule, and based on that rule found that the statute of limitations began to run on March 16, 2016, the date of her last appointment with Dr. Karandikar.

[¶9]   The parties agreed that the filing of the claim with the Medical Review Panel on March 12, 2018 tolled the running of the statute of limitations until thirty days after the Panel's dismissal order, or until June 21, 2018.  The court then added the four days that Ms. Candelaria had remaining before filing with the panel and established June 25, 2018 as the date on which the limitations period expired.  Because the complaint was not filed until June 29, 2018, the court concluded that it was untimely.

[¶10]  Ms. Candelaria filed a timely notice of appeal from the district court's order granting summary judgment.

---

[1] The record indicates that counsel for Ms. Candelaria first mailed the complaint from Cheyenne to the district court in Casper on June 24, 2018, and then made a second attempt on June 28.  In a cover letter that accompanied the second filing, Ms. Candelaria's counsel wrote:

> On June 24, 2018, I sent to your office a complaint identical to the complaint enclose[d] with a check for the filing fee of $70.00, Check no. 3469. I addressed it to your street address but without the Suite No. Today I have been informed that it has not yet arrived.
>
> I enclose another check in the amount of $70.00 drawn on the same account [and] a complaint and a copy. Please file the complaint as soon as it is received. If the first complaint and check arrive please r[e]turn to me or destroy the check. Please provide me with a stamped copy of the filed complaint in the enclosed self addressed and stamped envelope.

Ms. Candelaria does not rely upon counsel's initial mailing of the complaint on June 24, and it is therefore not an issue on appeal.

[2] During summary judgment proceedings, the parties agreed that Mountain View Regional Hospital was no longer a party and that Ms. Candelaria would submit an order formally dismissing it from the action.

## STANDARD OF REVIEW

[¶11]  Our review of a district court's grant of summary judgment is de novo.

> We review a district court's order granting summary judgment
> de novo and afford no deference to the district court's ruling.
> *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179
> (Wyo. 2016). This Court reviews the same materials and uses
> the same legal standard as the district court. *Id*. The record is
> assessed from the vantage point most favorable to the party
> opposing the motion ..., and we give a party opposing summary
> judgment the benefit of all favorable inferences that may fairly
> be drawn from the record. *Id*. A material fact is one that would
> have the effect of establishing or refuting an essential element
> of the cause of action or defense asserted by the parties. *Id*.

*Varela v. Goshen County Fairgrounds*, 2020 WY 124, ¶ 12, 472 P.3d 1047, 1052 (Wyo. 2020) (quoting *Kaufman v. Rural Health Dev., Inc.*, 2019 WY 62, ¶ 15, 442 P.3d 303, 308 (Wyo. 2019)).

[¶12]  With respect to the application of a statute of limitations, we have said that "[i]f the material facts are in dispute, the application of a statute of limitations is a mixed question of law and fact; otherwise, it is a question of law." *Estate of Weeks by and through Rehm v. Weeks-Rohner*, 2018 WY 112, ¶ 30, 427 P.3d 729, 737 (Wyo. 2018) (quoting *Carnahan v. Lewis*, 2012 WY 45, ¶ 27, 273 P.3d 1065, 1073 (Wyo. 2012)).  This appeal also presents a question of statutory interpretation, which we review de novo.  *Life Care Center of Casper v. Barrett*, 2020 WY 57, ¶ 12, 462 P.3d 894, 898 (Wyo. 2020) (quoting *Sullivan v. State*, 2019 WY 71, ¶ 7, 444 P.3d 1257, 1259 (Wyo. 2019)).

## DISCUSSION

[¶13]  Generally, a medical malpractice claim must be brought within two years of the date of the alleged act, error, or omission.  Wyo. Stat. Ann. § 1-3-107(a)(i) (LexisNexis 2019). The statute provides as follows in relevant part:

> (a) A cause of action arising from an act, error or
> omission in the rendering of licensed or certified professional
> or health care services shall be brought within the greater of
> the following times:
>
> > (i) Within two (2) years of the date of the alleged
> > act, error or omission, except that a cause of action may
> > be instituted not more than two (2) years after discovery

of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

> (A) Not reasonably discoverable within a two (2) year period; or

> (B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyo. Stat. Ann. § 1-3-107(a).

[¶14] The exceptions found in subsection 107(a)(i)(A) and (B) incorporate the discovery rule, meaning that if the exceptions apply, the statute of limitations is triggered under them when a claimant knows or has reason to know of his or her cause of action. *Pioneer Homestead Apartments III v. Sargent Engineers, Inc.*, 2018 WY 80, ¶ 17, 421 P.3d 1074, 1079 (Wyo. 2018) (citing *Adelizzi v. Stratton*, 2010 WY 148, ¶ 16, 243 P.3d 563, 567 (Wyo. 2010); *Robert L. Kroenlein Trust v. Kirchhefer*, 2015 WY 127, ¶ 16, 357 P.3d 1118, 1124 (Wyo. 2015)). We have also adopted the continuous treatment rule, which provides that "where the defendant physician has provided a continuing course of care for the same or related complaints, the cessation of treatment completes the 'act' which starts the running of the statutory period for filing suit." *Nobles v. Memorial Hosp. of Laramie County*, 2013 WY 66, ¶ 18, 301 P.3d 517, 522 (Wyo. 2013) (quoting *Metzger v. Kalke*, 709 P.2d 414, 417 (Wyo. 1985)).

[¶15] The parties agree that the continuous treatment rule applies, and that under that rule, March 16, 2016 (the date that Dr. Karandikar last treated Ms. Candelaria) was the date of the alleged act, error, or omission. Ms. Candelaria contends, however, that that is not the date from which the limitations period runs. She argues that the date of actual discovery triggers the statute of limitations, and that since she discovered her claim on March 29, 2016 when she saw Dr. Turner, that is the date from which the two-year period runs. In support of her argument, she points to our holdings in *Metzger* and to the language of Wyo. Stat. Ann. § 1-3-107(a). We will address each argument in turn and then address the statute's application to the undisputed facts in this case.

## A. *Metzger* Holdings

[¶16] Ms. Candelaria first contends that in *Metzger*, this Court held that the statute of limitations for a medical malpractice claim is triggered when the plaintiff discovers her claim, not when the claim is reasonably discoverable. We disagree with this reading of the decision.

6

[¶17]   In *Metzger*, Carolyn Metzger and her husband sued two physicians for their failure to diagnose a pituitary tumor when she was under their care during her pregnancy. *Metzger*, 709 P.2d at 415-16.   Ms. Metzger last saw one of the defendant physicians, Ruqaiya Hussain, M.D., on May 12, 1981, and the other defendant physician, Hein Kalke, M.D., on September 28, 1981.  *Id*. at 415.   She and her husband filed their action against the defendant physicians on September 13, 1983.  *Id*. at 416.   The Court adopted the continuous treatment rule, and with respect to the claim against Dr. Kalke, it held that the complaint was timely filed because it was filed within two years of his last treatment of Ms. Metzger.  *Id*.

[¶18]   With respect to the claim against Dr. Hussain, the plaintiffs made no attempt to rely on the discovery exception incorporated into Wyo. Stat. Ann. § 1-3-107(a)(i)(A) and (B), and instead asserted that they actually discovered the alleged act or omission of Dr. Hussain in the second year after his last treatment of Ms. Metzger on May 12, 1981.  *Metzger*, 709 P.2d at 417-18.   They contended that they were therefore entitled to an additional six months to file their claim under subsection 107(a)(iv), which provides that "[i]f under paragraph (i) . . . of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months."  *Id*. at 418.   The Court agreed and interpreted section 107(a)(iv) to apply as follows:

> Subsection (a)(iv) speaks of the time of discovery of the "alleged act, error or omission," which simply means the date on which the plaintiff first learns of the wrongdoing which forms the basis of his complaint. Whether the injured party should have learned or had reason to know of the wrongful act at an earlier date is irrelevant ***for purposes of this portion of the statute***.

*Metzger*, 709 P.2d at 418 (emphasis added).

[¶19]   The Court completed its analysis by first defining what constitutes actual notice of a medical malpractice claim.  *Metzger*, 709 P.2d at 418-20.   It then concluded that the plaintiffs did not have actual notice until the second year after the date of last treatment, and that they were therefore entitled to the six-month extension of the limitations period provided under subsection 107(a)(iv).  *Id*. at 420.

[¶20]   The Court did not hold that the discovery rule does not apply to medical malpractice claims or that the statute of limitations for such claims always runs from the date of actual notice.  The holding addressed only the application of Wyo. Stat. Ann. § 1-3-107(a)(iv), when a plaintiff discovers her claim in the second year after the alleged act, error, or omission.  Here, Ms. Candelaria concedes that she discovered her claim less than two

7

weeks after her last treatment with Dr. Karandikar, not in the second year, and therefore subsection 107(a)(iv) and the *Metzger* holdings interpreting that provision do not apply.

## B.    Language of Wyo. Stat. Ann. § 1-3-107(a)

[¶21]  Ms. Candelaria next points to section 107(a), which states, "A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought ***within the greater of the following times***," as a basis to measure the limitations period from the date of discovery.  Wyo. Stat. Ann. § 1-3-107(a) (emphasis added).  She argues that the emphasized language means that the statute of limitations will run from either the date of the act, error, or omission, or from the date of discovery, whichever results in a longer limitations period.  This reading finds no support in the statute and is contrary to our precedent.

[¶22]  When interpreting a statute, we look to the plain meaning of the words used and consider the statute as a whole, "giving effect to every word, clause, and sentence according to their arrangement and connection." *Life Care Center*, ¶ 16, 462 P.3d at 898-99 (quoting *Sullivan*, ¶ 10, 444 P.3d at 1259-60).  Section 107(a) reads in relevant part:

> (a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought ***within the greater of the following times***:
>
> > (i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:
> >
> > > (A) Not reasonably discoverable within a two (2) year period; or
> > >
> > > (B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.
> >
> > (ii) For injury to the rights of a minor, by his eighth birthday or within two (2) years of the date of the alleged act, error or omission, whichever period is greater . . . .

\* \* \* \*

(iii) For injury to the rights of a plaintiff suffering from a legal disability other than minority, within one (1) year of the removal of the disability;

(iv) If under paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months.

Wyo. Stat. Ann. § 1-3-107(a) (emphasis added).

[¶23] It is undisputed that section 107(a)(i) is the provision that applies to Ms. Candelaria's claim. By its plain terms, it requires that a claim be filed within two years of the alleged act, error, or omission, ***except*** in the case of a claim that was not discoverable in that two-year period. If the claim was discovered or reasonably discoverable within those two years, it must be filed within either two years of the act, error, or omission, or two years plus six months if section 107(a)(iv) applies. In other words, if the act, error, or omission is discovered within two years, the date of actual discovery does not affect the running of the limitations period unless section 107(a)(iv) applies to extend the period.[3]

[¶24] As to the meaning of section 107(a)'s phrase, "within the greater of the following times," the more reasonable interpretation is that it refers to the provisions that immediately follow it, which are subsections (i) thru (iv). Each subsection provides a method to calculate the date from which the statute of limitations will run under a specified circumstance, and it is apparent that more than one subsection may apply in a given case. In those cases where more than one of the section 107(a) subsections applies, section 107(a) allows application of the one that provides the longer limitations period.

[¶25] This interpretation fits with the way in which we have consistently applied the statute of limitations under Wyo. Stat. Ann. § 1-3-107. For example, in *Vance v. Wyomed Laboratory, Inc.*, the plaintiff sued a breath testing lab for negligent testing, and we upheld the dismissal of his claims as time barred. 2016 WY 61, ¶¶ 1-3, 375 P.3d 746, 747 (Wyo. 2016). Applying section 107, we explained:

---

[3] Section 107(a)(iv) in fact illustrates the unreasonableness of Ms. Candelaria's proffered interpretation. If the date of actual discovery was the event that triggered the statute of limitations in all cases, there would be no need to extend the limitations period by six months for those claims discovered in the second year. *See Hayse v. Wyo. Bd. of Coroner Standards*, 2020 WY 4, ¶ 9, 455 P.3d 267, 272 (Wyo. 2020) ("This Court will not interpret a statute in a way which renders any portion of it meaningless or in a manner producing absurd results.") (quoting *Adekale v. State*, 2015 WY 30, ¶ 13, 344 P.3d 761, 765-66 (Wyo. 2015)).

Each of Mr. Vance's claims is based on an "act, error or omission" which occurred on December 5, 2012. Mr. Vance asserts that he discovered the facts supporting his claims sixty-nine days later, on February 12, 2013. Because he discovered those facts within the first year after December 5, 2012, § 1–3–107(a) required that Mr. Vance bring those claims within two years of the act, error or omission, which was December 5, 2014. Mr. Vance did not do so.

*Vance*, ¶ 16, 375 P.3d at 749.

[¶26]  In *Lucky Gate Ranch, L.L.C. v. Baker & Assocs., Inc.*, we upheld summary judgment in favor of the defendant on the ground that the plaintiff's breach of contract claim was time barred.  2009 WY 69, ¶ 1, 208 P.3d 57, 59 (Wyo. 2009).  In so holding, we rejected the same argument Ms. Candelaria makes in this case.

The "act, error or omission" that provides the basis for Lucky Gate's cause of action is the breach of contract that occurred in May 2004. Lucky Gate learned definitively, in the fall of 2004, that Baker had not submitted the petition to the State Engineer's Office. Based upon the plain language of the statute, Lucky Gate's claim was barred when litigation was not commenced within two years of the contractual breach. The limitation period would have expired in May 2006. From a practical perspective, the fact that Lucky Gate learned in the fall of 2004 that the petition had not been filed with the State Engineer's Office does not change the expiration date of the limitation period. If the alleged "act, error or omission" was discovered in the second year, "the period for commencing a lawsuit shall be extended by six (6) months." Wyo. Stat. Ann. § 1-3-107(a)(iv). Because Lucky Gate discovered the breach in the first year, however, the limitation period is still measured from "the date of the alleged act, error or omission." Wyo. Stat. Ann. § 1-3-107(a)(i).

*Lucky Gate*, ¶ 15, 208 P.3d at 64.

[¶27] Finally, in *Metzger*, the plaintiffs' claim against defendant Dr. Kalke was discoverable in December 1981 at the earliest or July 1982 at the latest. *Metzger*, 709 P.2d at 418.  This Court held:

[T]he limitation period established by § 1-3-107(a) began to run with respect to appellants' claims against Dr. Kalke on

10

> September 28, 1981, the date he last treated Carolyn Metzger. Appellants timely filed their complaints against Kalke and the Medical Center for Women on September 13, 1983, within the two years allowed by subsection (a)(i).

*Metzger*, 709 P.2d at 417.

[¶28] Wyo. Stat. Ann. § 1-3-107 and our precedent are thus clear. If a claim is discovered within the first year following an alleged act, error, or omission, the limitations period is two years from the date of the alleged act, error, or omission. If a claim is discovered in the second year, the limitations period is two years and six months from the date of the alleged act, error, or omission.

## C.      Application of the Statute of Limitations to Ms. Candelaria's Claim

[¶29] Under the continuous treatment rule, the "act, error or omission which starts the running of the statute of limitations against malpractice actions" is "the termination of the course of treatment for the same or related illnesses or injuries." *Nobles*, ¶ 33, 301 P.3d at 526 (quoting *Metzger*, 709 P.2d at 417). That undisputed date in this case was March 16, 2016, the date on which Dr. Karandikar last treated Ms. Candelaria. Because Ms. Candelaria discovered her claim on March 29, 2016, at the latest, she discovered it within the first year following the termination of treatment, and the limitations period thus began running on March 16, 2016.[4]

[¶30] Ms. Candelaria does not challenge the district court's calculation of the date on which the statute of limitations expired after she terminated Dr. Karandikar's care, which took into account the tolling attributable to Ms. Candelaria's filing of her claim with the Medical Review Panel. We therefore affirm the court's finding that the statute of limitations expired on June 25, 2018 and its conclusion that Ms. Candelaria's complaint was untimely filed on June 29, 2018.

[¶31] Affirmed.

---

[4] Arguably, Ms. Candelaria's claim was reasonably discoverable when Dr. Wirt told her that her spine was a mess and that she should not return to Dr. Karandikar's care. We need not address this, however, because it would not change the result we reach based solely on Ms. Candelaria's admitted date of discovery.