# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 85

APRIL TERM, A.D. 2024

August 8, 2024

ANNE G. McNAIR,

Appellant
(Plaintiff),

v.

JOSHUA D. BECK, M.D., an individual;
ORTHOPAEDICS OF JACKSON HOLE,
P.C., d/b/a TETON ORTHOPAEDICS,
a Wyoming profit corporation; and
NORTH LINCOLN COUNTY HOSPITAL
DISTRICT, d/b/a STAR VALLEY
HEALTH, a governmental entity,

Appellees
(Defendants).

S-23-0279

*Appeal from the District Court of Lincoln County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
Jared S. Crecelius and Matthew A. Walker, Olsen Legal Group, LLC, Cheyenne, Wyoming.  Argument by Mr. Walker.

*Representing Joshua D. Beck, M.D. and Orthopaedics of Jackson Hole, P.C., d/b/a Teton Orthopaedics:*
Scott E. Ortiz and Zara S. Mason, Williams, Porter, Day & Neville, P.C., Casper, Wyoming.  Argument by Ms. Mason.

*Representing North Lincoln County Hospital District, d/b/a Star Valley Health:*
Andrew F. Sears and Meggan J. Hathaway, Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming.  Argument by Mr. Sears.



*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Anne G. McNair suffered a perforated esophagus and an infection following cervical fusion surgery at North Lincoln County Hospital District, d/b/a Star Valley Health (Star Valley).  Dr. Joshua D. Beck of Orthopaedics of Jackson Hole, P.C., d/b/a Teton Orthopaedics (Teton) was the operating physician.  After submitting a notice of claim to Star Valley under the Wyoming Governmental Claims Act (WGCA), Ms. McNair filed a complaint against Dr. Beck, Teton, and Star Valley (collectively Defendants) alleging medical malpractice, negligence, negligent failure to train and supervise, and vicarious liability.  The district court granted the Defendants' motions to dismiss on statute of limitations grounds and denied Ms. McNair's motion for leave to file an amended complaint because it concluded amendment of the complaint would be futile.  We reverse and remand.

## ISSUES

[¶2]    Ms. McNair raises three issues which we restate as two:

> 1.      Did the district court err by granting the Defendants' motions to dismiss based on its determination that the notice of claim and complaint were untimely under the applicable statutes of limitations?
>
> 2.      Did the district court abuse its discretion by denying Ms. McNair's motion for leave to file an amended complaint based on its conclusion that any amendment would be futile?

## FACTS

**A.      Factual Background**

[¶3]    Because the district court dismissed this case under W.R.C.P. 12(b)(6), we recite the facts as they are alleged in Ms. McNair's complaint.  *Woodie v. Whitesell*, 2019 WY 115, ¶ 22, 451 P.3d 1152, 1158 (Wyo. 2019).

[¶4]    In 2017, Ms. McNair began treatment for cervical pain and bilateral hand weakness with Dr. Beck, an orthopedic surgeon employed by Teton.  Dr. Beck recommended she undergo an elective anterior cervical discectomy and fusion from C6-C7.  On December 30, 2020, Dr. Beck performed the surgery at Star Valley.  During the surgery, he removed the C6-C7 disc and replaced it with hardware.  In early 2021, Ms. McNair reported to Teton with minor complaints, including the protrusion of a metal wire from her neck.  Teton staff removed the wire with nail clippers and instructed her to do the same if it happened again.

1

[¶5]    On April 12, 2021, Ms. McNair began having difficulties swallowing and extreme pain in her left anterior neck.  The next day, she went to the local urgent care clinic.  Her symptoms worsened so her urgent care providers transferred her to the Lander, Wyoming emergency department on April 14, 2021.  There, the doctors found a large abscess with air bubbles in her lower neck and a displaced esophagus.  Ms. McNair was transferred by air ambulance to the Wyoming Medical Center in Casper, Wyoming, where doctors discovered her neck hardware "bathed in pus" and a perforation of her esophagus.  Ms. McNair was transported via air ambulance to the University of Colorado Health in Colorado where surgeons removed the hardware installed by Dr. Beck, repaired her perforated esophagus, and performed a posterior stabilization with new hardware.  Ms. McNair spent a total of twenty-one days in the Colorado hospital.

## B.    Procedural Background

[¶6]    On April 4, 2023, Ms. McNair submitted a notice of claim under the WGCA to Star Valley and six days later, on April 10, 2023, she filed a complaint against the Defendants.  Her complaint alleged the hardware Dr. Beck installed in her neck was too large and perforated her esophagus, and the bacteria found in her surgical wounds was caused by Star Valley's failure to properly sanitize the operating room.  She also alleged Dr. Beck and Teton minimized and ignored her post-operative complaints and failed to train their employees on proper post-operative care.  She asserted claims of medical malpractice and negligent training and supervision against Dr. Beck and claimed Teton and Star Valley were vicariously liable for his negligence.  She asserted a direct negligence claim against Star Valley and a negligent training and supervision claim against Teton.

[¶7]    In lieu of an answer, Dr. Beck and Teton filed a motion to dismiss under W.R.C.P. 12(b)(6), arguing Ms. McNair failed to file her complaint within the two-year statute of limitations applicable to medical malpractice actions.  Wyo. Stat. Ann. § 1-3-107(a).  Recognizing the continuous treatment rule applicable to medical malpractice actions in Wyoming, they argued the cessation of treatment started the statutory period for filing suit.  They asserted Dr. Beck operated on Ms. McNair on December 30, 2020, and continued to treat her until January 2021.  As a result, the two-year statute of limitations began running in January 2021, giving Ms. McNair until January 2023 to file her complaint.  She filed her complaint in April 2023.

[¶8]    Star Valley filed a motion to dismiss under W.R.C.P. 12(b)(6) or in the alternative a motion for summary judgment under W.R.C.P. 56.  With respect to Ms. McNair's claim that it failed to sterilize the operating room, Star Valley asserted that under the continuous treatment rule, Ms. McNair had two years from the date she was discharged from Star Valley on December 31, 2020, to file her notice of claim and complaint and her April 2023 filings were untimely.  Wyo. Stat. Ann. §§ 1-3-107(a) (complaint) and 1-39-113(a) (notice of claim).  With respect to Ms. McNair's claim seeking to hold it vicariously liable for Dr.

Beck's negligence, Star Valley denied it employed Dr. Beck and argued the claim was untimely for the same reasons her complaint against Dr. Beck was untimely.

[¶9]    In response to the Defendants' motions, Ms. McNair filed a motion for leave to file an amended complaint to clarify when Dr. Beck's treatment of her neck condition ceased. Her proposed amended complaint mirrored her original complaint but added additional allegations: Dr. Beck ordered Ms. McNair to engage in physical therapy after her surgery and referred her to a physical therapist; Ms. McNair attended physical therapy until her emergency treatment; the therapist listed Dr. Beck as the overseeing physician; the therapist communicated with Dr. Beck regarding Ms. McNair's treatment; and the therapist, after learning of Ms. McNair's emergency treatment, issued a Notice of Discharge on May 11, 2021, "terminating the treatment with the physical therapist and terminating Dr. Beck's treatment of [Ms. McNair's] illness."

[¶10]    Relying on these allegations and the continuous treatment rule, Ms. McNair argued dismissal of her claims against Dr. Beck and Teton was improper because her April 10, 2023 complaint was timely filed within two years of her May 11, 2021 discharge from the physical therapy ordered by Dr. Beck.  With respect to Star Valley, Ms. McNair acknowledged that if the evidence showed Star Valley did not have a contractual relationship with Dr. Beck to provide follow-up treatment, then "the latest date to file [her notice of] claim [and complaint] would be [two years from] the date the treatment was terminated—the date [she] was discharged from [Star Valley]" following her surgery.  She maintained, however, that Dr. Beck was currently employed by Star Valley and, at the time of her surgery, he and Star Valley may have had some type of contractual relationship requiring Star Valley to continue to treat Ms. McNair until Dr. Beck ceased treating her on May 11, 2021.  She argued, under these facts, her April 2023 filings were timely.

[¶11]    The district court declined to convert Star Valley's motion to dismiss into a motion for summary judgment.  It granted the Defendants' motions to dismiss.  It reasoned the continuous treatment rule did not apply because Ms. McNair's alleged injury did not result from a series of treatments but rather from a single act of negligence—the surgery on December 30, 2020.  Under §§ 1-3-107(a) and 1-39-113(a), the court concluded the statutes of limitations for all Defendants began December 31, 2020, the date Ms. McNair was discharged from Star Valley following the surgery, and she had two years from that date to file her notice of claim and complaint.  Consequently, her April 2023 filings were untimely.  It also denied Ms. McNair's motion for leave to file an amended complaint, finding any amendment would be futile.  It ruled the continuous treatment rule did not apply and did not extend the limitations period to May 11, 2021, the date she was discharged from physical therapy.  Ms. McNair timely appealed.

3

## STANDARD OF REVIEW

[¶12]  The district court dismissed Ms. McNair's complaint under W.R.C.P. 12(b)(6) for "fail[ure] to state a claim upon which relief can be granted."

> When reviewing a Rule 12(b)(6) dismissal, "[w]e conduct a *de novo* review of the materials that were before the district court." *Matter of Est. of Britain*, 2018 WY 101, ¶ 11, 425 P.3d 978, 981 (Wyo. 2018) (citing *Bush Land Dev. Co. v. Crook Cnty. Weed & Pest Control Dist.*, 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017)) (other citations omitted). "'[W]e accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff.'" *Woodie v. Whitesell*, 2019 WY 115, ¶ 22, 451 P.3d 1152, 1158 (Wyo. 2019) (quoting *DeLoge v. Homar*, 2013 WY 33, ¶ 9, 297 P.3d 117, 120 (Wyo. 2013)).  Dismissal is a drastic remedy which should be used cautiously; however, a motion to dismiss "'is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief.'" *Britain*, ¶ 11, 425 P.3d at 981–82 (quoting *WW Enters., Inc. v. City of Cheyenne*, 956 P.2d 353, 355 (Wyo. 1998), and *Feltner v. Casey Fam. Program*, 902 P.2d 206, 208 (Wyo. 1995)) (other citations omitted).

*Peterson v. Laramie City Council*, 2024 WY 23, ¶ 9, 543 P.3d 922, 926 (Wyo. 2024).

[¶13]  "We review a district court's decision on a motion for leave to amend a complaint for abuse of discretion.  To establish an abuse of discretion, the appellant must show the district court could not have reasonably conclude[d] as it did." *Gaston v. Life Care Ctrs. of Am.*, 2021 WY 74, ¶ 18, 488 P.3d 929, 936 (Wyo. 2021) (citations and quotation marks omitted).

## DISCUSSION

**I.**    ***Did the district court err by granting the Defendants' motions to dismiss based on its determination that the notice of claim and complaint were untimely under the applicable statutes of limitations?***

[¶14]  Ms. McNair argues the district court erred by granting the Defendants' motions to dismiss because the dismissal was based on its erroneous determination that the continuous treatment rule did not apply.  We agree.

4

[¶15]   Two statutes of limitations apply to this case.  The first, § 1-3-107(a), delineates the time limitations applicable to medical malpractice actions.[1]  *Candelaria v. Karandikar*, 2020 WY 140, ¶ 13, 475 P.3d 548, 551 (Wyo. 2020).  The second, § 1-39-113(a),[2] sets forth the time within which a notice of claim to a governmental entity must be submitted.  *Nobles v. Mem'l Hosp. of Laramie Cnty.*, 2013 WY 66, ¶ 12, 301 P.3d 517, 521 (Wyo. 2013).  Both statutes require the notice of claim and medical malpractice action to be filed within "two (2) years of the date of the alleged act, error or omission."[3]  Wyo. Stat. Ann.

---

[1] Section 1-3-107(a) provides in relevant part:

(a)      A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i)      Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(A)      Not reasonably discoverable within a two (2) year period; or
(B)      The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

.    .    .

(iv)      If under paragraph (i) . . . of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act, error or omission, the period for commencing a lawsuit shall be extended by six (6) months.

Wyo. Stat. Ann. § 1-3-107(a)(i), (iv) (LexisNexis 2023).

[2] Section 1-39-113(a) states:

(a)      No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i)      Not reasonably discoverable within a two (2) year period; or
(ii)      The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyo. Stat. Ann. § 1-39-113(a) (LexisNexis 2023).

[3] Both statutes allow the limitations period to run from the date of discovery of the "alleged act, error or omission" if the "alleged act, error or omission" was not reasonably discoverable within a two-year period or the plaintiff failed to discover the "alleged act, error or omission" within the two-year period despite the exercise of due diligence.  Wyo. Stat. Ann. §§ 1-3-107(a)(i)(A), (B), and 1-39-113(a)(i), (ii).  Section 1-3-107(a)(iv) also extends the limitations period by six months if the "alleged act, error or omission" is

§§ 1-3-107(a)(i), 1-39-113(a). In *Metzger v. Kalke*, we adopted the continuous treatment rule for medical malpractice cases. Under the rule, "the act, error or omission which starts the running of the statute of limitations against medical malpractice actions is the termination of the course of treatment for the same or related illnesses or injuries." *Metzger v. Kalke*, 709 P.2d 414, 417 (Wyo. 1985) ("[W]here the defendant physician has provided a continuing course of care for the same or related complaints, the cessation of treatment completes the 'act' which starts the running of the statutory period for filing suit."). We have applied the continuous treatment rule to determine when the "act, error or omission" occurred for purposes of starting the limitations period for both the submission of a notice of claim and the filing of a complaint. *Candelaria*, ¶¶ 29–30, 475 P.3d at 555; *Nobles*, ¶¶ 12–13, 33, 301 P.3d at 520–21, 527.

[¶16] The district court recognized our adoption of the continuous treatment rule in medical malpractice actions and determined the rule did not apply because Ms. McNair's injury resulted from "a single act of negligence" rather than from several treatments. It found "[t]here is nothing in the complaint that alleges, or even suggests, that [Ms. McNair's] injuries stemmed from any occurrence other than the surgery on December 30, 2020." The court distinguished our precedent applying the continuous treatment rule:

> This is not a case where there was a failure to diagnose, as in *Metzger*, 709 P.2d 414; where there was a series of surgeries and the negligence was not found until after the completion of the second surgery, as in *Jauregui v. Mem'l Hosp. of Sweetwater Cnty.*, 2005 WY 59, ¶ 3, 111 P.3d 914, 915 (Wyo. 2005), *overruled on other grounds by Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 3, 331 P.3d 1174 (Wyo. 2014); or where there was negligent treatment of a patient over the course of nine surgeries and aftercare, as in *Candelaria*.

Based on its rejection of the application of the continuous treatment rule, the court determined "[t]he act, error, or omission did not occur [in this case] when Dr. Beck discharged [Ms. McNair] from his care" but rather when Ms. McNair underwent surgery and was discharged from Star Valley on December 30-31, 2020. It found Ms. McNair had two years from that date, or until December 31, 2022, to file her notice of claim and complaint. Ms. McNair did not file either until April 2023.

[¶17] The district court erred when it determined the continuous treatment rule did not apply. While the court correctly summarized the facts of *Metzger*, *Jauregui*, and *Candelaria*, it misconstrued our application of the continuous treatment rule. The pertinent

---

discovered during the second year of the two-year limitations period. These provisions are not relevant in this appeal.

inquiry is whether, in any given case, the medical provider "has provided a continuing course of care for the same or related complaints." *Metzger*, 709 P.2d at 417.

[¶18] While not expressly stated, it appears the district court may have applied the single act exception to the continuous treatment rule. Under that exception,

> where there is a single act of allegedly negligent conduct, the statute of limitations begins to run at the time the plaintiff sustains damage from the act. More precisely, the cause of action begins to run at the time of the negligent act (and not at the end of the course of treatment) when the alleged tort consists of (1) a single act; (2) which is complete at a precise time; (3) which no continued course of treatment can either cure or relieve; and (4) where the plaintiff is actually aware of the facts upon which the claim is based; that is, the plaintiff is aware of the malpractice prior to the end of treatment.

*Doyle v. Kuch*, 611 N.W.2d 28, 31 (Minn. Ct. App. 2000) (internal citations omitted). In *Nobles*, we "decline[d] to adopt the single act exception to the continuous treatment rule in Wyoming" because it was "inconsistent with our precedent, not widely accepted, and difficult to apply[.]" *Nobles*, ¶ 44, 301 P.3d at 529. We reaffirm our decision in *Nobles*— the single act exception does not apply in Wyoming.

[¶19] The district court's determination that the continuous treatment rule did not apply sprang from its finding that "nothing in the complaint . . . alleges, or even suggests, that [Ms. McNair's] injuries stemmed from any occurrence other than the surgery on December 30, 2020." While Ms. McNair's complaint alleged she was injured during the December 30, 2020 surgery, it also claimed Dr. Beck's failure to follow accepted standards of post-operative care and to adequately follow up with her post-operative complaints caused her injuries. It further alleged that Teton and Star Valley were vicariously liable for Dr. Beck's breach of the standards of operative and post-operative care and that Dr. Beck's and Teton's failure to train and supervise their employees on proper post-operative care caused her to have to seek emergent care.

[¶20] Below Dr. Beck and Teton acknowledged that the continuous treatment rule applied. On appeal they argue that the district court was correct and the rule is inapplicable to this case because the policies underlying it would not be served here. They assert because Ms. McNair learned she was harmed within four months of the alleged negligent act, requiring her to file her complaint within a year and a half of her knowledge of the harm would not prejudice her. They rely on *Echols v. Keeler*, where we stated:

> The policies behind the continuous treatment rule would not be served by applying it in the manner suggested by [Mr. Echols]

7

in this case. [Mr. Echols] here is not prejudiced by an inability to identify the treatment which might have caused his harm, nor is there anything in the record to suggest that [the defendant chiropractor] had any desire to retain [Mr. Echols] as a patient and correct any error he might have made.

*Echols v. Keeler*, 735 P.2d 730, 732 (Wyo. 1987).

[¶21]   In *Echols*, more than three years after his last treatment by the named chiropractor, Mr. Echols sued the chiropractor for negligence in the diagnosis and treatment of his back injury. *Echols*, 735 P.2d at 730–31. Mr. Echols claimed the two-year statute of limitations had not yet run because after the named chiropractor terminated his treatment, Mr. Echols continued to be *treated by other doctors* for the same back injury. *Id.* We disagreed. *Id.* Applying the continuous treatment rule, we concluded that the statute of limitations began to run, at the very latest, on the last day Mr. Echols was treated by the named chiropractor. *Id.* at 732.

[¶22]   Dr. Beck's and Teton's interpretation of our ruling in *Echols* and their argument are inapt. We rejected an argument similar to the one raised here in *Nobles*, where we clarified that "we did not rule [in *Echols*] that the statute of limitations began to run as soon as [Mr. Echols] was able 'to identify the treatment which might have caused his harm.'" *Nobles*, ¶ 27, 301 P.3d at 525 (quoting *Echols*, 735 P.2d at 732). We made clear that we had applied the continuous treatment rule and found the statute of limitations had run because the named chiropractor last treated Mr. Echols more than three years before the complaint was filed. *Id.* The continuous treatment rule applies here, and the limitations periods began to run on the last day Ms. McNair was treated by the Defendants.

[¶23]   Turning to Ms. McNair's complaint, she alleged Dr. Beck began treating her in 2017 for cervical pain and bilateral hand weakness. On December 30, 2020, Dr. Beck performed surgery on her neck at Star Valley. At that time, Dr. Beck was employed by Teton. He was also in a relationship, as an employee or contractor, with Star Valley and acting within the course of that employment. Star Valley failed to properly sanitize the operating room prior to the surgery, and Dr. Beck surgically installed hardware in Ms. McNair's neck which was too large. In early 2021, Ms. McNair reported to Teton with minor complaints, including a metal wire protruding from her neck. Teton and Dr. Beck minimized and ignored Ms. McNair's complaints. Ms. McNair sought emergency treatment for a perforated esophagus and infection on April 13, 2021.

[¶24]   Applying the continuous treatment rule to these allegations, which we construe in the light most favorable to Ms. McNair, Dr. Beck and Teton began treating Ms. McNair's neck condition in 2017 and continued to treat her in "early 2021." "Early 2021" could mean they continued to treat her until April 13, 2021, the date Ms. McNair sought emergency treatment, making the April 4, 2023 notice of claim and the April 10, 2023

8

complaint timely. The same analysis applies to Ms. McNair's vicarious liability claim against Star Valley. With respect to the direct negligence claim against Star Valley for its failure to properly sanitize the operating room, Star Valley began treating Ms. McNair on December 30, 2020, the date of the surgery, and it is unclear when its treatment ceased. The complaint does not show, on its face, that the notice of claim and complaint were untimely with respect to this claim.

[¶25]  The Defendants argue that even applying the continuous treatment rule, Ms. McNair was required to file her complaint against Dr. Beck and Teton by January 2023 because, "[*a*]*s alleged in the Complaint*, Dr. Beck [and Teton] stopped treating Ms. McNair in January 2021." (Emphasis added.) They claim "[t]here is not a single allegation in the Complaint that Dr. Beck treated Ms. McNair at any time between January and April of 2021, when she presented to Urgent Care for difficulty swallowing." They also argue Ms. McNair had until December 31, 2022, to file her notice of claim and complaint against Star Valley because the cessation of treatment for hospitals under the continuous treatment rule is generally the date the patient is discharged from the hospital, in this case, December 31, 2020.

[¶26]  Ms. McNair's complaint does not allege that Dr. Beck and Teton stopped treating her in January 2021 or that she was discharged from Star Valley on December 31, 2020. These dates come from exhibits attached to Star Valley's memorandum in support of its motion to dismiss or in the alternative motion for summary judgment. The district court expressly declined to convert Star Valley's motion to dismiss into a motion for summary judgment and excluded all matters outside of the complaint because "they [were] unnecessary to the determination" of the case. Its decision that the notice of claim and complaint were untimely was based on "the face of the complaint." Our review is correspondingly limited to the complaint. *Peterson*, ¶ 16, 543 P.3d at 928 ("When addressing a motion to dismiss under Rule 12(b)(6), the only materials the district court should consider are 'the complaint and any incorporated attachments . . . .'" (quoting *Bush Land Dev. Co. v. Crook Cnty. Weed & Pest Control Dist.*, 2017 WY 12, ¶ 7, 388 P.3d 536, 539 (Wyo. 2017))); *Sweetwater Station, LLC v. Pedri*, 2022 WY 163, ¶ 12, 522 P.3d 617, 622 (Wyo. 2022) (when reviewing a W.R.C.P. 12(b)(6) dismissal, "[w]e employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party" (quoting *Moses Inc. v. Moses*, 2022 WY 57, ¶ 8, 509 P.3d 345, 349 (Wyo. 2022))).[4]

---

[4] The Defendants rely on the notice of claim for their argument that Dr. Beck and Teton stopped treating her in January 2021. The notice of claim, however, merely stated that "[a]s early as January, [Ms. McNair] began reporting problems at follow-up visits." The district court decided and Star Valley argues on appeal that Ms. McNair "conceded" below that Star Valley ceased treating her on December 31, 2020, the date she was discharged from Star Valley. Ms. McNair agreed that if the evidence shows that Star Valley did not have a contractual obligation with Dr. Beck to continue to provide her with follow-up treatment, the latest date she had to file her notice of claim was two years from the date she was discharged from the hospital. She did not concede the date of discharge.

9

[¶27]   Star Valley maintains that even if the continuous treatment rule applies, Dr. Beck's alleged continuous treatment of Ms. McNair cannot be imputed to the vicarious liability claim against it.  It argues the only allegations in Ms. McNair's complaint that concern its relationship with Dr. Beck were: (1) Dr. Beck "may have been in a contractual relationship as an employee or contractor of . . . Star Valley . . . at the time of the surgery," and (2) "[t]o [the] extent of a contractual relationship, [Dr.] Beck would have been acting within his scope of employment at the time of the surgery . . . ."  It claims these baseless and speculative allegations do not satisfy basic pleading requirements, and Ms. McNair's counsel should have investigated Dr. Beck's contractual relationship with Star Valley before filing the complaint, specifically through a Public Records Act request.  Star Valley also maintains it is immaterial whether Dr. Beck was a contractor of Star Valley because a governmental entity is only liable under the WGCA for the medical malpractice of its employees.  The affidavit of its vice president of provider services, attached to its reply in support of its motion to dismiss, confirms Dr. Beck was not an employee of Star Valley at the time of Ms. McNair's surgery.

[¶28]   Star Valley is generally correct that it may only be held liable for Dr. Beck's medical malpractice under the WGCA if Dr. Beck was its employee acting within the scope of his duties.  *Campbell Cnty. Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶¶ 24–27, 317 P.3d 573, 579–80 (Wyo. 2014) (with the exception of the Wyoming State Hospital, "the WGCA does not provide an express waiver of sovereign immunity for non-employees of a governmental[/public] hospital").  *See also* Wyo. Stat. Ann. § 1-39-103(a)(iv)(A) (with certain exceptions, not applicable here, "'[p]ublic employee' . . . [m]eans any officer, employee or servant of a governmental entity . . ."); Wyo. Stat. Ann. § 1-39-110(a) ("A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the medical malpractice of health care providers who are employees of the governmental entity . . . while acting within the scope of their duties.").  Ms. McNair's complaint alleged Dr. Beck was an employee of Star Valley at the time of the filing of the complaint and may have been an employee of Star Valley at the time of her surgery.  These allegations satisfy her obligations under W.R.C.P. 8(a)(2) which states only that the complaint provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  *Acorn v. Moncecchi*, 2016 WY 124, ¶ 66, 386 P.3d 739, 759 (Wyo. 2016) ("[W.R.C.P. 8(a)(2)] is based upon the theory of notice pleading and only requires that a plaintiff 'plead the operative facts involved in the litigation so as to give fair notice of the claim to the defendant.'" (quoting *Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶ 12, 297 P.3d 110, 114 (Wyo. 2013))).

[¶29]   In maintaining that Ms. McNair's counsel should have made a Public Records Act request to determine Star Valley's relationship with Dr. Beck prior to filing the complaint, Star Valley relies on the federal "plausibility" standard for determining whether a complaint states a claim for relief.  Under that standard,

[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007)). We have not adopted the federal standard. *Wyo. Guardianship Corp. v. Wyo. State Hosp.*, 2018 WY 114, ¶ 16, 428 P.3d 424, 431 (Wyo. 2018). Similarly, the district court was incorrect in finding Ms. McNair was required to present an "affidavit or other demonstrative evidence to support her claim that Dr. Beck and Star Valley . . . were contractually linked," and Star Valley cannot rely on the affidavit of its vice president of provider services attached to its reply in support of its motion to dismiss. Dismissals under W.R.C.P. 12(b)(6) are based on the allegations in the complaint and incorporated attachments. *Peterson*, ¶ 16, 543 P.3d at 928.

[¶30] The district court erred by granting the Defendants' motions to dismiss based on its determination Ms. McNair's notice of claim and complaint were untimely under the applicable statutes of limitations.

## II. Did the district court abuse its discretion by denying Ms. McNair's motion for leave to file an amended complaint based on its conclusion that any amendment would be futile?

[¶31] Ms. McNair filed her motion for leave to file an amended complaint under W.R.C.P. 15(a)(2), which states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as . . . futility of amendment . . .—the leave sought should, as the rules require, be freely given.

*Gaston*, ¶ 18, 488 P.3d at 936 (quoting *Foxley & Co. v. Ellis*, 2009 WY 16, ¶ 32, 201 P.3d 425, 433 (Wyo. 2009)).

[¶32] The district court denied Ms. McNair's motion for leave to file an amended complaint to include allegations that Dr. Beck treated her until she was discharged from

11

physical therapy on May 11, 2021, because it found any amendment would be futile. It concluded Ms. McNair could not use the continuous treatment rule to extend Dr. Beck's treatment to May 11, 2021, because the rule did not apply as "no set of facts have been alleged pointing to any injury except for [that] caused by the surgery on December 30, 2020."

[¶33] As we discussed above, the district court erred in deciding the continuous treatment rule did not apply. That error alone constitutes an abuse of discretion requiring reversal of the district court's denial of Ms. McNair's motion for leave to file an amended complaint. *Grove v. Pfister*, 2005 WY 51, ¶ 6, 110 P.3d 275, 278 (Wyo. 2005) ("An abuse of discretion can exist if the wrong law has been applied, the correct law has been applied but incorrectly interpreted, or if the correct law has been improperly applied."). *See also Singer v. Lajaunie*, 2014 WY 159, ¶ 28, 339 P.3d 277, 285 (Wyo. 2014) (Because the district court's denial of the defendant's motion to amend his counterclaim to add fraud was, in large measure, tied to its erroneous grant of summary judgment on the defendant's promissory estoppel claim, "the district court's decision denying the motion to amend the counterclaim must also be reversed.").

[¶34] Independently, the district court abused its discretion by finding any amendment of the complaint would be futile. On its face, the proposed amended complaint does not show that the notice of claim and complaint were untimely. The proposed amended complaint contained the same allegations as the complaint. It alleged the Defendants' treatment of Ms. McNair's neck condition and post-operative complaints continued into "early 2021." It contained additional allegations that Ms. McNair received physical therapy ordered by Dr. Beck from a therapist recommended by him until May 11, 2021, and the therapist communicated with Dr. Beck about Ms. McNair's treatment. These facts, taken as true and in the light most favorable to Ms. McNair, show the Defendants continued to treat Ms. McNair for her neck condition and post-operative complaints until May 11, 2021. Her notice of claim and complaint were timely filed.

[¶35] The Defendants argue the district court reasonably denied Ms. McNair's motion for leave to file an amended complaint on futility grounds because, even applying the continuous treatment rule and accepting the allegations in the proposed amended complaint as true, the notice of claim and complaint were untimely. They state:

> None of the . . . proposed allegations . . . allege that Dr. Beck spoke with or evaluated Ms. McNair between January 2021 and when she received emergency treatment in April 2021. Contending that Dr. Beck's care extended until May 2021 because he was listed as the overseeing physician, even if taken as true, is not enough to constitute treatment under the continuous treatment rule [because the rule requires that the physician actually examine or evaluate the plaintiff, or at the

12

very minimum see the plaintiff]. Furthermore, alleging that Ms. McNair's physical therapist communicated with Dr. Beck regarding [Ms. McNair's] treatment, without describing the nature of these claimed communications and whether Dr. Beck weighed in on her progress, future treatment and prognosis . . . is not evidence that Dr. Beck continued to *treat* Ms. McNair.

[¶36] Ms. McNair was not required to describe the nature of Dr. Beck's communications with the physical therapist in her complaint or proposed amended complaint under W.R.C.P. 8(a)(2). *Acorn*, ¶ 66, 386 P.3d at 759. Whether the physical therapy Ms. McNair received following surgery amounted to "treatment" of Ms. McNair by the Defendants under the continuous treatment rule is a fact-intensive inquiry, not subject to resolution in an appeal from a W.R.C.P. 12(b)(6) dismissal.

[¶37] The district court abused its discretion by denying Ms. McNair's motion for leave to file an amended complaint.

## *CONCLUSION*

[¶38] The district court erred by determining the continuous treatment rule did not apply in this case. The complaint and amended complaint do not show, on their face, that the notice of claim and the complaint were untimely under the applicable statutes of limitations. The district court erred by granting the Defendants' motions to dismiss and abused its discretion by denying Ms. McNair's motion for leave to file an amended complaint. We reverse and remand for further proceedings consistent with this decision.